Gary TERRELL, Plaintiff-Appellant,

v.

UNIVERSITY OF TEXAS SYSTEM PO-
LICE, et al., Defendants-Appellees.

No. 84–2546.

United States Court of Appeals,
Fifth Circuit.

June 30, 1986.

Rehearing Denied July 28, 1986.

Richard D. Strahan, George M. Kirk, Jr., Houston, Tex., for plaintiff-appellant.

Joseph W. Barbisch, Jr., Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before WILLIAMS, JOLLY and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Gary Terrell, a public employee, was fired when his secret diary, which was critical of his supervisor, fell into the supervisor's hands. We hold that Terrell, if he "spoke" in the diary at all, spoke only as an employee and not as a citizen. Under *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), he was not engaged in speech "upon matters of public concern" and was therefore not insulated by the first amendment from being fired for keeping the diary.

## I

In response to an anonymous complaint that appeared to come from an unhappy employee, the Director of Police for the University of Texas System conducted an investigation of the University's Houston Department in January 1981. The gist of the anonymous complaint was that Charles Price, the Houston Chief of University Police, did not have adequate control over a group of supervisors headed by Captain Gary Terrell and that these supervisors were guilty of harassment and favoritism in their relations with lower-level employees. On February 2, the Director filed a report concluding that there were serious management problems and indicating that the allegations in the anonymous complaint appeared to be true. Chief Price was given six months to cure the deficiencies and was told to file monthly status reports with the Director's office. In the wake of these minatory events, Chief Price relieved Captain Terrell of his patrol duties, assigned him to an office near the Chief's own office, and directed him to revise the department's policy and procedures manual.

On June 9, Chief Price received an anonymous letter accompanied by photocopies of pages from a small spiral-bound notepad. The notes, which were in Terrell's handwriting, showed that the author had been scrutinizing the chief's job performance; indeed, many of the incidents recorded in the notepad reflected unfavorably on Price. On June 25, Chief Price called Terrell into his office to discuss a number of problems. In the course of the discussion, the chief asked Terrell whether he had been keeping files on him. Terrell denied it, and the chief said that he didn't feel he could trust him. Price asked for Terrell's resignation, Terrell refused, and the chief fired him. A few days later, according to one witness, Terrell was offered a hearing, but he replied "that that wouldn't be necessary; that he wasn't interested in our kangaroo courts ... and he would see us in court, a real court."

True to his word, Terrell filed suit in federal court against the University of Texas System Police, the Houston Department, the Director of the System Police, and Chief Price. Terrell alleged that his discharge violated his free speech and due process rights under the first and fourteenth amendments; he asked for declaratory and injunctive relief as well as damages. After the usual procedural maneuvering, the case was tried to a jury. Responding to detailed special interrogatories, the jury found for the defendants on all issues except one. After being instructed that three matters dealt with in the photocopied notepad (Chief Price's policy of mandatory overtime; the need for supervisory training; and the need to conduct exit interviews with employees who resigned) were issues of "public concern" protected by the first amendment, the jury determined that Terrell's exercise of protected first amendment rights was a substantial or motivating factor in the decision to terminate him.

The jury determined that Terrell had suffered no damages, and the district court declined to award declaratory or injunctive relief. Judgment was entered for the defendants, and Terrell appeals.

## II

Although Terrell raises three issues on appeal, only one of them requires

extended discussion.[1] He contends that the trial court erred in failing to use the jury's single finding in his favor—that he was terminated because of his first amendment activities—as the basis for an award of declaratory and injunctive relief. The defendants respond that the trial court misinterpreted *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and that it was error to instruct the jury that the comments in the notepad were addressed to matters of "public concern" for purposes of the appropriate first amendment analysis.[2] We agree with the defendants, and we accordingly affirm the judgment of the district court.[3]

Assuming, without deciding, that an employee's personal notebook or diary can be considered first amendment "speech" even though the contents come to light completely without the employee's knowledge or consent, we hold that Terrell's constitutional claim is barred by *Connick v. Myers*. In *Connick*, the Supreme Court held "that when a public employee speaks not *as a citizen* upon matters of public concern, but instead *as an employee* upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." 103 S.Ct. at 1690 (emphasis added) (citation omitted). In determining whether a particular speech or writing addressed "a matter of public concern," we must decide whether the plaintiff was "deprived of fundamental rights by virtue of working for the government."[4] Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee.[5] In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.[6]

In the light of these principles, it is plain that Gary Terrell's personal notebook cannot serve as the basis for a claim that he was fired for exercising his first amendment rights. He made no effort to commu-

---

1. Terrell raises a qualified immunity issue that disappears in the light of our holding on the first amendment question. He also contends that the jury should not have believed the witness who testified that Terrell declined an offer of a post-termination hearing. The witness's testimony was sufficient to support a finding that Terrell waived whatever due process right he might have had to a hearing. *See Davis v. Vandiver*, 494 F.2d 830, 832 (5th Cir.1974) (post-termination hearing is sufficient to satisfy due process requirements); *Bueno v. City of Donna*, 714 F.2d 484, 492–93 (5th Cir.1983) (waiver may be found where a person knowingly fails to take advantage of an actually existing opportunity for a hearing). The record does not show that the witness was lying, and this court does not review credibility choices made by juries.

2. Whether Terrell's speech was addressed to a matter of "public concern" is a legal question that the trial judge properly removed from the jury's consideration. On appeal, we make an independent review of the whole record in order to determine whether the district court properly resolved the question. *See Connick*. 103 S.Ct. at 1690 & n. 7, 1692 n. 10. *Cf. McPherson v. Rankin*, 786 F.2d 1233, 1237 (5th Cir. 1986).

3. When the judgment of the district court is correct, it may be affirmed on appeal for reasons other than those given or relied on below. *O'Malley v. United States Fidelity & Guaranty Co.*, 776 F.2d 494, 499 n. 1 (5th Cir.1985).

4. *Connick*, 103 S.Ct. at 1690; *see also id.* (Constitution "does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the State.").

5. *See id.* at 1691 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case.").

6. *See id.* at 1691 n. 8 (a writing "not otherwise *of public concern does not attain that status* because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest.").

nicate the contents of the notebook to the public, and the evidence does not suggest that he would have had any occasion to do so. The notes in question were made at a time when the Houston Department was already under investigation by the Director of the University System Police. That investigation, which was undertaken without any intervention from outside the government, had already suggested that Terrell himself was a leading cause of serious problems in the Houston Department. To whatever extent Terrell's notes suggested either that Chief Price had been guilty of mistakes or that Terrell was contemplating revelations that would be embarrassing to his supervisor, such suggestions were a wholly intragovernmental concern at the time Terrell was fired.[7] The conclusion is inescapable: Terrell was not terminated for speaking "as a citizen upon matters of public concern." *Connick*, 103 S.Ct. at 1690, or for "speak[ing] out as a citizen on a matter of general concern, *not tied to a personal employment dispute,"* *id.* at 1691 n. 8 (emphasis added).

The judgment of the district court is AFFIRMED.

---

7. This lawsuit did not call for a determination of whether Terrell deserved to be fired or whether Chief Price terminated him for self-serving purposes. The only question is whether Terrell's constitutional rights were violated.