Stanley J. STEWART, Plaintiff–
Appellant,

v.

PARISH OF JEFFERSON, et
al., Defendants–Appellees.

No. 91–3078.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1992.

M.H. Gertler, Gertler, Gertler & Vincent,
New Orleans, La., for plaintiff-appellant.

Clement P. Donelon, Asst. Parish Atty.,
Metairie, La., for Parish of Jefferson.

Bernard Marcus, Ellis B. Murov,
Deutsch, Kerrigan & Stiles, New Orleans,
La., for Jefferson Parish Dept. of Public
Works, Pete Schomaker.

Before CLARK, Chief Judge, JONES,
Circuit Judge and PARKER *, District
Judge.**

* District Judge of the Eastern District of Texas,
sitting by designation.

** This opinion was concurred in by Chief Judge
Clark prior to his resignation from the Court on
January 15, 1992.

ROBERT M. PARKER, District Judge:

Appellant Stanley J. Stewart (Stewart) filed suit against the Parish of Jefferson (Parish), Harold Pete (Pete), and Harold Shomaker (Shomaker) for violation of Stewarts First Amendment right to free speech, violation of Stewart's civil rights under 42 U.S.C. § 1983, and pendent state law tort claims. The Honorable Veronica D. Wicker, United States District Judge for the Eastern District of Louisiana, New Orleans Division, granted Pete's Motion to dismiss and subsequently granted summary judgment in favor of the Parish and Shomaker. In this appeal, Stewart challenges both actions of the district court. For the reasons stated below, we affirm.

Stewart began his employment with the Jefferson Parish Department of Public Works in August, 1970. Stewart eventually was promoted to the position of Engineering Inspector II. He developed a friendship with a co-worker, Joyce Breaud, who was also an Engineering Inspector II. Their immediate supervisor was Pete, who, in turn, was supervised by Shomaker. Shomaker's immediate superior was William Lavalle, Director of the Department of Public Works.

During their tenure with the Department of Public Works, Breaud and Pete entered into a rather stormy personal relationship which endured for a number of years. The demise of this relationship, in late 1987, is at the root of this lawsuit.[1] Not only did Pete and Breaud engage in verbal confrontations at work, but Stewart alleges that Pete subjected him to harassment because of his friendship with Breaud, including repeated inquiries as to Breaud's after-hours activities. Stewart asserts that this verbal harassment included threats of demotion.

In January, 1988, Stewart and Breaud met with Shomaker to complain of Pete's alleged sexual harassment of Breaud and his related harassment of Stewart. Stewart had previously spoken with the Department of Public Works Personnel supervisor, Phil Rupp, who had instructed him to file an official complaint. Stewart asserts that Pete's harassment intensified after the complaint to the point that, on January 22, 1988, Stewart left work following a confrontation with Pete and checked himself into the Ochsner Hospital Psychiatric Unit. He was diagnosed as suffering from an acute anxiety attack and subsequently underwent stress relaxation therapy at the hospital.

In March, 1988, Breaud and Stewart brought their complaints to Shomaker's superior, Lavelle. At that time, they were removed from Pete's supervision and placed under the supervision of Larry Nalty. Breaud was subsequently transferred to another Department of Public Works section. In June, 1988, Pete retired.

Following Pete's retirement, Shomaker became Stewart's supervisor. Stewart asserts that Shomaker harassed him by overburdening him with work and adding duties for which he was not previously responsible, such as parkway work. He further asserts that Shomaker was unfriendly toward him. In December, 1988, Stewart was assigned to the drainage inspection team. The assignment was made by Bill Sneed, who had replaced Lavelle as Director of the Department of Public Works. Stewart declined to perform the assignment because of his fear of snakes and rodents, often found in the drainage system. Rather than accept the assignment, Stewart transferred to the sign department as a Sign Technician I.[2] The transfer was made in January, 1989. Although the salary for a Sign Technician I was somewhat lower than Stewart's previous salary, his overall income increased due to overtime pay. Stewart perceived the transfer as a demotion and his anxiety symptoms returned. He stopped working on August 3,

1. Stewart alleges that Breaud was coerced into the relationship. This allegation, while deplorable if true, is not relevant to the resolution of this appeal.

2. One of the employees in the sign department transferred to Stewart's job. Stewart asserts that this person was not required to perform drain inspection and that, following the transfer, no one performed that duty.

1989. He filed this lawsuit on December 15, 1989.

Stewart raises two issues on appeal. He first contends that the district court erred in granting summary judgment as to his claims against the Parish and Shomaker. In his second issue, Stewart challenges the district court's order granting Pete's Motion to Dismiss.

## I.

▮ Stewart's challenge of the summary judgment is based upon the district courts determination that Stewart's speech was not a matter of public concern warranting First Amendment protection. The inquiry into the protected status of speech is one of law and, as such, is subject to *de novo* review by this Court. *See Kirkland v. Northside Independent School Dist.*, 890 F.2d 794, 798 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2620, 110 L.Ed.2d 641 (1990); *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 n. 2 (5th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). We have, therefore, considered the entire record in order to determine whether the district court properly resolved this legal question.

▮ The issue of whether an employee's speech involves a matter of "public concern" is a slippery inquiry, one which defies precise definition. It thus requires a case-by-case analysis, with careful consideration of the content, context, and form of the statement. *Kirkland*, 890 F.2d at 798. When a public employee speaks *as an employee* rather than as a citizen on matters that address his personal employment conditions, First Amendment protection is not invoked absent unusual circumstances. *See Ayoub v. Texas A & M University*, 927 F.2d 834, 837 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 72, 116 L.Ed.2d 46 (1991) (*citing Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). This focus upon the role of the speaker is warranted by the realistic observation that "almost anything that occurs within a public agency could be of concern to the public." *Ayoub*, 927 F.2d at 837 (*quoting* 792 F.2d at 1362).

▮ Review of the record as a whole leads this Court to the conclusion reached by the district court. Although Stewart vehemently asserts that the content of his speech concerned sexual harassment of Breaud, the facts are more indicative of what amounted to an unpleasant work environment. The demise of the long-term relationship between Breaud and Pete was apparently played out at the office in a particularly hostile and childish fashion with Stewart becoming involved due to his friendship with Breaud.[3]

While the working conditions which prompted Stewart's complaints were at best unsatisfactory, the record indicates that the content of his speech concerned the personal abuse of Stewart by Pete because of his friendship with Breaud. The content of Stewart's speech on behalf of Breaud is likewise questionable. This Court is cognizant of sexual harassment in the workplace, but the facts of this case are more indicative of a soured personal relationship than sexual harassment.

The context and form of Stewart's speech also mitigate against First Amendment protection. Stewart's complaints were made verbally in private meetings with Rupp, Shomaker, and Lavelle. As noted above, the complaints focused upon Pete's hostility toward Stewart because of his friendship with Breaud. The record clearly indicates that Stewart was speaking *as an employee* upon matters only of personal interest.

In summary, our review of the record leads us to the conclusion that Stewart's speech did not involve a matter of public concern. The district court made the correct decision on this question of law and

---

3. In a letter written by Stewart, purportedly on the advice of counsel, to the Jefferson Parish Councilmen prior to the filing of this suit, he characterized the "sex scandal" as arguments between Pete and Breaud at the time of their breakup which made the office environment unpleasant. (Record pp. 282–90). This letter does not mention Pete's alleged sexual demands on Breaud.

properly granted summary judgment in favor of the Parish and Shomaker.

## II.

In his second issue, Stewart contends that the district court improperly granted Pete's Motion to Dismiss on the grounds of prescription because Stewart was unaware that he had been injured by Pete until August 3, 1989.

The parties agree that the applicable prescriptive period in this case is one year. The crux of this issue is the point at which the one year period commenced. Stewart asserts that the harassment he suffered at the hands of Pete left him with a "smoldering problem" that erupted into a disabling mental disorder one and one-half years later, rendering him unable to work. Pete asserts that the prescriptive period should have begun no later than the time of Pete's retirement in June, 1988.

The statute of limitations period commences once the plaintiff acquires possession of two critical facts: (1) an injury has occurred; and (2) the identity of the person who inflicted the injury. *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir.1980). The prescriptive period will not commence prior to the time the plaintiff is *or should be* aware of the causal connection between his injury and the acts of the defendant. *Id.*

The undisputed facts of this case clearly indicate that the prescriptive period had run as to Pete by the time Stewart filed suit. Stewart's complaints regarding Pete's harassment in late 1987 and early 1988 culminated in the meeting with Lavelle in March, 1988. At that time Stewart was removed from Pete's supervision and any direct harassment from Pete ceased. Stewart has had no contact with Pete since Pete's retirement in June, 1988. It is further undisputed that Stewart went to the hospital on January 22, 1988, following a confrontation with Pete. At that time he was suffering from an acute anxiety attack, and he subsequently underwent stress therapy at the hospital. It appears that Stewart's disabling condition was triggered by events which occurred after Pete's retirement. In a letter from R. John Wakeman, Ph.D., Program Director of the Ochsner Hospital's Stress Treatment Center, dated August 2, 1989, he noted Stewart's successful completion of the Stress Management Workshop in 1988. The letter proceeds with a discussion of Stewart's "recent resurgence of anxiety" and other symptoms brought on by the "gradually deteriorating work situation" described by Stewart upon his return to the hospital on June 26, 1989. (Record pp. 28–29).

It is clear to this Court that Stewart possessed the critical fact of injury as early as January, 1988. At that time he knew or should have known he had been injured by Pete. The district court correctly granted Pete's Motion to Dismiss.

The judgment of the district court is AFFIRMED.