IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-8006

---

DAVID GILLUM,

Plaintiff-Appellant,

versus

THE CITY OF KERRVILLE, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Western District of Texas

---

( September 16, 1993 )

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:

David Gillum filed this 42 U.S.C. § 1983 suit against Kerrville, Texas, a city that once employed him as a policeman, and three of its officials, City Manager Glenn D. Brown, Police Chief Louis A. Barrow, Jr., and Personnel Director Kirk McCarley, claiming that he was fired in violation of his federal constitutional rights to free speech and due process, and in violation of state constitutional and common law rights and duties. Holding that these claims did not have merit, the district court granted summary judgment. We affirm.

I

In early August 1990, David Gillum was a policeman with the Kerrville Police Department. A "reliable" confidential informant

told Gillum that Police Chief Louis Barrow had "smoked dope" with Cheryl Schilling, a woman with a criminal record. Gillum asked Joe Lanning, Chief of the Internal Affairs Division, how to proceed. Then, in an attempt to follow requirements for reporting and conducting internal investigations of police officers, as reflected in the department's Procedural Order No. 90-06, Gillum reported the information to Rosie McCray, his commanding officer. Procedural Order No. 90-06 provided that an internal affairs officer must investigate all allegations of police misconduct; it did not specifically treat investigations of the police chief.

Lanning authorized Gillum to interview Schilling. Lanning also told Chuck Dickerson, his superior officer, and Kirk McCarley, the city personnel director, about the allegations, and that Gillum would interview Schilling. Gillum reported that Schilling denied smoking dope with Barrow, but admitted drinking a beer and discussing her recent arrest with him. Lanning then authorized Gillum to interview Debbie Vasquez, another witness identified by Schilling.

Lanning then told Barrow about the situation. The record does not reflect Barrow's response, but Lanning then told Gillum that he would no longer have a role in the investigation, and that he should submit a written statement about the matter. At this point, Gillum says, he began to suspect that his superiors wanted to stonewall the investigation, a point confirmed in his mind when he was summoned to a meeting with Barrow, McCarley, Lanning, and McCray.

During this meeting, Gillum was told that Internal Affairs would conduct a formal investigation. Gillum, however, was worried that the Chief had been told about the Internal Affairs investigation before the filing of a formal complaint. He commented that he did not think that Internal Affairs could conduct an impartial inquest, and speculated that Barrow and the others would either suspend him until he could acquiesce in the formal investigation or fire him altogether. Gillum stated that he did not want to quit his job, but wanted to return to normal police work. The meeting ended when Gillum placed his badge and gun on the desk and left the room, stating, "I won't compromise this badge." Gillum asserts that he did so because he suspected that he was being ordered to participate in a cover-up.

As he left the police station, Gillum told Larry Rhodes, the police dispatcher, that he did not quit. Gillum did not clean his locker but reported to work on his next scheduled day. His name was not on the duty roster. When he inquired, McCarley and Barrow told Gillum that he had quit and no longer worked for the Kerrville Police Department. Gillum requested a hearing on his status with the police force in a letter to McCray. Gillum was given a hearing before McCray and Barrow under rules for fired employees.

Gillum was not reinstated and appealed to Glenn Brown, the city manager. Brown held a hearing. Gillum requested that the hearing be open, but it was closed. Gillum also requested that Lanning attend the hearing, but Lanning did not. However, Brown offered reinstatement with the Kerrville Police Department without

compensation for time off the duty roster. Not satisfied, Gillum filed this suit. Kerrville offered Gillum a name clearing hearing, but he did not attend.

In the district court, Gillum argued that he was fired for expressing his opinion about the investigation of Barrow, and for refusing to participate in a conspiracy to stonewall the investigation. Gillum maintained that his firing violated his right to free speech under the First Amendment to the U.S. Constitution, and under Article I, Section 8, of the Texas Constitution. Gillum also argued that he was denied a meaningful opportunity to clear his name, in violation of his right to due process under the Fifth and Fourteenth Amendments to the U.S. Constitution.

Gillum also filed claims for defamation and intentional infliction of emotional distress and conspiracy to deny his civil rights in violation of 42 U.S.C. § 1983. Gillum demanded compensatory damages for lost wages and earning capacity, past and future mental anguish, severe emotional distress, future medical expenses, loss of reputation, punitive damages for conscious disregard of his rights, attorneys' fees under 42 U.S.C. § 1988, and declaratory and injunctive relief. The district court granted summary judgment to defendants. Gillum appealed.

II

We cannot affirm a summary judgment unless "there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

4

We review the evidence, as well as inferences that may be drawn from the evidence, in the light most favorable to the party that opposed the motion.  <u>Little v. Liquid Air Corp.</u>, 952 F.2d 841, 847 (5th Cir. 1992).

III

Gillum argues that a reasonable jury could find a violation of his right to free speech under the First Amendment because he was fired for speaking to his superior officers about police corruption.  Of course, the state cannot fire an employee for exercising the right to speak on matters of public concern. <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983); <u>Pickering v. Board of Educ.</u>, 391 U.S. 563, 574 (1968).

The district court held that though allegations of misconduct by Barrow were a matter of public concern, Gillum did not prove that he spoke or engaged in expressive conduct within the contemplation of the First Amendment.  It also held that even if Gillum engaged in protected speech or expressive conduct, he could not invoke the First Amendment as his speech or expressive conduct imposed an impermissible burden on the proper administration of the workplace.

Whether Gillum quit the police force or lost his job for insubordination was on this record a question of fact.  We are not persuaded, however, that Gillum's right to free speech as an employee protected him from being fired for the expressive conduct he has pointed to.

5

In Terrell v. University of Texas Sys. Police, 792 F.2d 1360 (5th Cir. 1986), cert. denied, 479 U.S. 1064 (1987), we did not focus on the inherent "importance" of the subject matter of the speech, but on the extent to which the terminated employee spoke as a citizen or employee. In Terrell, as in this case, the employee did not speak as a citizen, but as an employee embroiled in a personal employment dispute. Id. at 1363. This focus on the hat worn by the employee when speaking rather than upon the "importance" of the issue reflects the reality that at some level of generality almost all speech of state employees is of public concern. Relatedly, we are chary of an analytical path that takes judges so uncomfortably close to content based inquiries.

Whether Barrow broke the law is of public concern, but that was not Gillum's focus. Instead, Gillum disputed his role in the internal investigation. To be sure, corruption in an internal affairs department is a matter of public concern. Gillum's focus was, however, on this issue only insofar as it impacted his wish to continue his investigation. Gillum was not told to withhold any information he had. To the contrary, he was told to put it in writing, and subsist from his investigation. That Gillum did not think that adequate adds nothing. Had he submitted his statement and later found that it was ignored, he might have complained or "gone public." Firing Gillum for those acts would have presented a quite different case.

6

IV

Gillum argues that he was denied a name clearing hearing in violation of his due process right to work in a chosen profession. Gillum must prove (1) that he was discharged; (2) that defamatory charges were made against him in connection with the discharge; (3) that the charges were made public; (4) that the charges were false; (5) that he requested a hearing in which to clear his name; (6) that the request was denied; and (7) that no meaningful public hearing was conducted before the discharge. Rosenstein v. City of Dallas, 876 F.2d 392 (5th Cir. 1989), aff'd on relevant grounds, 902 F.2d 91 (en banc) (per curiam), cert. denied, 498 U.S. 855 (1990).

-1-

Gillum argues that Brown, McCarley, and Barrow published defamatory statements in the Kerrville Daily Times in connection with his discharge. The alleged defamatory statements appeared on September 30, 1990, during the administrative appeals process. The statements concerned Gillum's dispute with the Kerrville Police Department and appeared in a news account of the administrative proceeding.

The threshold question is whether there is a sufficient nexus between the alleged defamatory statements and the discharge, as required by Siegert v. Gilley, 111 S.Ct. 1789 (1991). It is apparent that these statements were sufficiently tied to Gillum's termination. The statements were about his termination and were made while the administrative process was in play. It does not

7

follow, however, that Gillum has a claim that he was deprived of any constitutionally secured rights.

-2-

The difficulty with Gillum's claim is that his initial "firing" was subject to an administrative appeals process. The result of that process was tender of reinstatement, which Gillum declined. It is true that the process took from mid August until the end of September and the city declined to pay Gillum for the interim period. We cannot conclude, however, that defendants impaired Gillum's employment opportunities sufficiently to deprive him of constitutionally secured liberty interests. Gillum was given an opportunity to be heard and prevailed. Gillum cannot create a constitutional claim by declining to return to work. The district court granted summary judgment because Gillum declined reinstatement. We agree.

V

Gillum argues that his discharge violated Article I, Section 8, of the Texas Constitution, which provides in relevant part that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege." Tex. Const. of 1876, art. I, § 8 (1955). The district court held that no cause of action for damages could be assessed for violation of Article I, Section 8, and that finding no violation of the First Amendment precludes finding a violation of Article I, Section 8.

8

Texas courts have not recognized a violation of Article I, Section 8, as an actionable constitutional tort.  One Texas Court of Appeals has stated that "Texas has a strong bill of rights, but . . . no Texas statute or case . . . provides a citizen the kind of redress afforded by 42 U.S.C. § 1983 or by <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>.  There is no state constitutional tort."  <u>Bagg v. University of Tex. Medical Branch</u>, 726 S.W.2d 582, 584 n.1 (Tex.App.--Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citations omitted); <u>see also</u> <u>City of Houston v. Leach</u>, 819 S.W.2d 185 (Tex.App.--Houston [14th Dist.] 1991, no writ).  <u>But see</u> <u>Jones v. Memorial Hosp. Sys.</u>, 746 S.W.2d 891 (Tex.App.--Houston [1st Dist.] 1988, no writ) (implicitly recognizing actionable constitutional tort in reversing summary judgment in case involving Article I, Section 8).

Gillum reads <u>Bagg</u> as holding that though he cannot recover damages under Article I, Section 8, against a governmental unit of the state, employees remain personally liable for wrongdoing.  As we read it, <u>Bagg</u> holds that government employees cannot be liable for doing their job.  Brown, McCarley, and Barrow were about their official duties in considering how to proceed in the internal investigation, and how to deal with a police officer who resisted their determination.

VI

Gillum charges that Brown, McCarley, and Barrow made false and defamatory statements published in the <u>Kerrville Daily Times</u> that injured his reputation.  We have held that "defamation of a police

9

officer by city officials in the course of discharging that police officer is protected under the city's governmental immunity and, as an exercise of a governmental function, is not actionable either against the city or the state officials under state slander law." Rosenstein, 876 F.2d at 397 (citing City of Dallas v. Moreau, 718 S.W.2d 776, 779-80 (Tex. App.--Corpus Christi 1986, writ n.r.e.)). On this basis, the district court concluded that both the city and its officials are not liable for defamation as a matter of law.

In Moreau, the court found immunity not only for the city but also for its officers who published information concerning a policeman's dismissal from the police force. Id. at 779. After holding that "appellant city was immune from the libel cause of action by appellee for publishing a letter of discharge as a matter of law," the court noted, "[t]his reasoning also applies to the cause of action (if such exists) for appellant's employees' acting without proper motive and without due care and diligence in the performance of their official duties in regard to the act of posting the termination letter on the bulletin board." Id. at 779-80. We have located no Texas case concerning comments to the press about a discharge. The facts of this case resemble those in Moreau, and we are not persuaded that Texas courts would conclude that these responses to press inquiries are ultra vires.

VII

Gillum alleges that Brown, McCarley, and Barrow intentionally caused him emotional distress. To prevail on this claim, Gillum has to demonstrate that (1) the defendant acted intentionally and

10

recklessly; (2) the conduct was "extreme and outrageous;" (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. <u>Dean v. Ford Motor Credit Co.</u>, 885 F.2d 300, 306 (5th Cir. 1989); <u>Bushell v. Dean</u>, 781 S.W.2d 652, 657 (Tex.App.--Austin 1989), <u>rev'd in part on other grounds</u>, 803 S.W.2d 711 (Tex. 1991); <u>Tidelands Auto Club v. Walters</u>, 699 S.W.2d 939, 942 (Tex.App.--Beaumont 1985 writ ref'd n.r.e.).

We have interpreted the term "outrageous" to mean surpassing "all possible bounds of decency," such that it is "utterly intolerable in a civilized community." <u>Dean</u>, 885 F.2d at 306 (quoting Restatement (Second) of Torts § 46, Comment d). Given this framework, the district court correctly granted summary judgment, as Gillum failed to demonstrate that any of the defendants acted in an outrageous way. Their statements provided either accurate descriptions of the Gillum controversy, or at worst hyperbolist ramblings. Gillum has not demonstrated that his superiors either surpassed the bounds of decency or contravened the standards of a civilized community.

The district court correctly observed that Section 101.057 of the Texas Civil Practices and Remedies Code provides that any limited waiver of sovereign immunity does not apply where the claim arises out of an intentional tort. Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (West 1986). This provision shields municipalities from suits arising out of intentional torts committed by governmental employees, <u>City of Waco v. Hester</u>, 805 S.W.2d 807,

11

810-12 (Tex. App.--Waco 1990, writ denied), and should be liberally construed to accomplish this objective. <u>Robinson v. Central Texas MHMR Center</u>, 780 S.W.2d 169, 170 (Tex. 1989).

VIII

Gillum advances a wrongful termination claim based on a common law exception to the "at will" employment doctrine. He argues that he had a good faith belief that he would be required to perform an illegal act of omission or commission, acquiescence or participation in an attempt to conceal Barrow's alleged recreational drug use, and as such should not have been terminated for his refusal to follow formal investigative procedures. The district court granted summary judgment on this claim, holding that Gillum could not have held such a good faith belief after he received an offer to provide a written statement concerning his investigation, an offer of reinstatement, and an offer of a name clearing hearing. We agree.

IX

Gillum attacks the dismissal of his claim of civil conspiracy to violate his constitutional rights to free speech and due process. The district court denied this claim because Gillum's constitutional rights had not been violated, so that no basis existed for assigning liability for conspiracy. As we have noted, "it remains necessary to prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." <u>Villanueva v. McInnis</u>, 723 F.2d 414, 418 (5th Cir. 1984).

AFFIRMED.

12