**LEVINSKY'S, INC., et al., Plaintiffs,**

v.

**WAL–MART STORES, INC., Defendant.**

**Civil No. 95–36–P–C.**

United States District Court,
D. Maine.

March 31, 1998.

---

Harold J. Friedman, Karen Frink Wolf, Friedman, Babcock & Gaythwaite, Portland, ME, Lee H. Bals, Marcus, Grygiel & Clegg, PA, Portland, ME, for Plaintiffs.

Peter Detroy, Russell Pierce, Norman, Hanson & Detroy, Portland, ME, for Defendant.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR PRETRIAL DETERMINATION ON THE ISSUE OF PUBLIC CONCERN

GENE CARTER, District Judge.

The case is now before the Court on Defendant's Motion for Pretrial Determination on the Issue of Public Concern (Docket No. 69) pursuant to the decision of the Court of Appeals for the First Circuit. *See Levinsky's Inc. v. Wal–Mart Stores, Inc.*, 127 F.3d 122 (1st Cir.1997). In the first trial between these parties, the Court submitted two statements to the jury as basis on which to resolve the issue of whether Levinsky's was defamed by Wal–Mart: (1)Levinsky's Portland store is "trashy" and (2) when you call Levinsky's Portland store "you are sometimes put on hold for 20 minutes—or the phone is never picked up at all." The jury returned a general verdict for Plaintiff corporate Levinsky's on the multiple defamation claims.

· On appeal, the Court of Appeals for the First Circuit concluded that the "trashy" statement was an opinion rather than a verifiable fact and, therefore, that its submission to the jury as part of the defamation claim was erroneous. *Id.* at 129–30. Because the verdict may have been based, in whole or in part, on the "trashy" statement, the Court of Appeals ordered that the verdict be set aside. On the comment regarding being "put on hold," the Court of Appeals found that this Court inadequately analyzed the threshold question of whether that statement touched upon an issue of public concern. *Id.* at 133. On remand, the Court of Appeals directed

this Court to undertake a "whole-record review of the speech's form, content, and context." *Id.*

## I. FACTS

The single remaining alleged defamatory statement arises out of an interview initiated by Michael J. Boardman, a reporter for BIZ newspaper, with Gilbert Olson, the Scarborough, Maine Wal–Mart store manager. Trial Transcript (hereinafter Tr.) at 39–40. Boardman had decided to write an article about Levinsky's centered on Levinsky's then-current marketing campaign involving Wal–Mart. Boardman Dep. at 12–13; Tr. 39, 54. Levinsky's marketing campaign consisted of a radio advertisement in which it asserted that it sold certain items that Wal–Mart did not carry and highlighted that it sold Dickies trousers at a lower price than did Wal–Mart. Exhibit T–1.[1] Boardman saw the competition between Levinsky's and Wal–Mart as a "local microcosm" of the "David versus Goliath" struggle between a small business and Wal–Mart and decided it would be a good topic for an article. Boardman Dep. at 12–13; Tr. at 57. Before interviewing a representative of Levinsky's, Boardman contacted Olson by telephone, identified himself and the newspaper he was representing, and stated that he was contacting Olson with regard to Levinsky's marketing campaign. Tr. at 40–41. During their conversation, Olson told Boardman that when calling Levinsky's "you are sometimes put on hold for 20 minutes—or the phone is never picked up at all." *See Id.*

## II. DISCUSSION

### A. Public Concern

■ "The Supreme Court has roughly bisected the sphere of social commentary between matters of public concern, which are those that can be 'fairly considered as relating to any matter of political, social, or other concern to the community,' and matters of private concern, which are those that address 'matters only of personal interest.'" *Levinsky's,* 127 F.3d at 132 (quoting *Connick v. Myers,* 461 U.S. 138, 146–47, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). There are three factors which the Court must analyze in order to reach a conclusion regarding whether a statement falls in the public or the private hemisphere: the form, content, and context of the speech. *Id.* at 128 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 761, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985)). When addressing this issue, the First Circuit has directed the Court to consider that "the relevant community need not be very large and the relevant concern need not be of paramount importance or national scope. Rather, 'it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested.'" *Id.* at 132 (quoting *Roe v. San Francisco,* 109 F.3d 578, 585 (9th Cir.1997)).

■ Discussion of what amounts to an issue of general or public concern has occurred infrequently outside of the public employment context, thus forcing the Court to seek guidance from the public employment case law.[2] However, the mere fact that the

---

1. The Levinsky's advertisement goes like this:

 For over 75 years, Levinsky's has built a reputation for the best selection of quality name-brand fashions and at guaranteed lowest prices always. So, to protect our reputation, we visited Wal–Mart to compare. Levinsky's has a great selection and the lowest prices in Maine on Levi's jeans, Dockers and denim shirts. Wal–Mart doesn't carry Levi's, but we did get a good buy on a toaster. Levinsky's has the lowest prices always on Columbia jackets, hats and gloves. Wal–Mart doesn't carry Columbia, but if you are looking for fishing equipment.... Children's Oshkosh fashions make great holiday gifts, and Levinsky's has them at the lowest prices. Wal–Mart doesn't carry Oshkosh, but if you need house paint.... For

 Nike hiking boots and footwear, it's Levinsky's. Wal–Mart doesn't carry Nike, but they were having a sale on toothpaste. Everyone loves Woolwich sweaters, flannel and chamois shirts and Duofold turtlenecks and winter underwear. Levinsky's has them. Wal–Mart doesn't. We did find Dickies pants and shirts at Wal–Mart, but Levinsky's has the lower prices. So for holiday shopping, no one beats Levinsky's for the best selection and lowest prices always. At Levinsky's, start looking good today.
 Exhibit T–1.

2. Although the Supreme Court has approved use of case law in the area of government employment for instructive purposes, *Dun & Bradstreet,*

topic of the speech was one of arguable public interest is not controlling. *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 (5th Cir.1986). In general, a matter worthy of or the subject of public debate and a part of the nation's free exchange of ideas is a matter of public concern. *Dun & Bradstreet*, 472 U.S. at 759–60. When explaining how to distinguish between the two types of speech, the Court of Appeals for the Ninth Circuit has stated that "[s]peech by public employees may be characterized as not of public concern when it 'deals with individual personnel disputes and grievances' and when that information 'would be of no relevance to the public's evaluation of the performance of governmental agencies.' " *Roe*, 109 F.3d at 584 (quoting *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983)). With this in mind, the Court will now look at the form, context, and content of the instant statement to determine whether it relates to an issue of public concern.

■ Wal–Mart claims that Olson's statement raises an issue of public concern. The linchpin of Wal–Mart's arguments on the statement's form, content, and context is that there exists an overarching issue of public concern regarding "Wal–Mart's emergence on the American scene and its competitive impact on small-town, locally based retailers." Defendant's Motion for Pretrial Determination on the Issue of Public Concern (Docket No. 69) at 3 and the attached 46 newspaper and magazine articles generally concerning the merits of Wal–Mart's effect on the marketplace. Levinsky's responds that although there may be an issue of public concern regarding Wal–Mart's proper place in the retail market, appropriate analysis of the public concern issue in this case must be circumscribed to the context in which Olson's statement was made and, therefore, should not include consideration of the general issue going to the merits of Wal–Mart's competitive position in the marketplace.[3] Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Pretrial Determinations on the Issue of Public Concern (Docket No. 71) at 4–5.

The Court concludes that Wal–Mart's assertion that it "had[,] long before this suit[,] been the subject of widespread media coverage, considerable nationwide public debate, and even congressional hearings" is correct Defendant's Motion for Pretrial Determination on the Issue of Public Concern at 3. Wal–Mart repeatedly argues that there is direct connection between the national debate about Wal–Mart generally, Olson's statement, and the context in which the statement was made.[4] In essence, Wal–Mart's argument is built on the theory that *it* is an issue of public concern and, therefore, any issue that involves it raises an issue of public concern. The Court finds the ultimate conclusion of Wal–Mart's argumentation to be that any statement uttered by Wal–Mart

---

472 U.S. at 759, the First Circuit has cautioned that more rigorous analysis may be necessary outside the public employment context. *Levinsky's*, 127 F.3d at 132 ("Public employee cases typically involve speech on matters relating to public sector jobs, and criticism of the workings of government is at the core of conduct protected by the First Amendment.").

3. Levinsky's also argues that Wal–Mart has waived its opportunity to present the argument regarding its status as a "mega-retailer" and its resulting effect in the marketplace on smaller retailers. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Pretrial Determinations on the Issue of Public Concern at 3–4. If the Court had been asked to consider the newspaper articles when making its determination on the issue of public concern on Defendant's motion for summary judgment or on Defendant's motion for judgment as a matter of law, it would have done so. The Court has been directed to consider the issue of public concern anew. In the current procedural posture, it is appropriate for the Court to consider the articles as part of the context in which this case arises.

If the Court considers the articles submitted by Wal–Mart, Levinsky's requests that it be permitted the opportunity to conduct discovery to test the relationship and relevance of the articles to this case. Plaintiffs' Memorandum Regarding Legal Issues On Remand from the United States Court of Appeals (Docket No. 66) at 5 fn. 4. Given the Court's conclusion on the issue, it is unnecessary to permit Plaintiffs to conduct additional discovery on the articles.

4. The Court accepts that there may be an issue of public concern regarding Wal–Mart putting the small retailer out of business. Nevertheless, the Levinsky's advertising campaign, and the resulting Biz article, do not address that debate. The Levinsky's advertisement addresses the competition between two retailers.

regarding any other smaller retailer necessarily puts that speech within the realm of public concern. This sweeps too broadly.

The Court rejects Wal–Mart's broad context, and finds the proper context in which to view this statement to be the Levinsky's marketing campaign, which focuses on the competition between two identified retailers and customer service by highlighting price differences and products not found at Wal–Mart. Levinsky's advertising campaign is, without a doubt, centered on the retail competition between two businesses vying for market position.[5] Levinsky's asserts that competition between businesses is an everyday matter that does not implicate the need for First Amendment protection. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Pretrial Determinations on the Issue of Public Concern at 2, 12. Given the radio advertisement in the instant case, the Court disagrees. Levinsky's chose to target Wal–Mart in its radio advertisement. By doing so, it focused public attention on the competition between the two businesses. The competition between two identified retailers, Levinsky's and Wal–Mart, is the relevant context in which to analyze this statement.[6]

Boardman testified that, after hearing the Levinsky's advertising campaign, he decided to write an article about Levinsky's. Boardman Dep. at 13, 42. Boardman characterized his intentions with regard to the article as follows:

> I'd been listening to the ad campaign of Levinsky's during the holiday season, and I was quite impressed by it; and I think what it was that impressed me was the fact that they were juxtaposing their stores with Wal–Mart in Scarborough, and I thought that was quite ambitious ..., and I thought that would be something worth

pursuing, with it centered essentially on their marketing campaign.

Boardman Dep. at 12–13. Boardman testified that he interviewed Wal–Mart to get "a brief comment on how Wal–Mart—in the David and Goliath scheme of things, how they felt about a small family business taking them on, as far as a price war and claims of lower prices." Boardman Dep. at 42; Tr. 57. The BIZ article, Wal–Mart asserts, was "about how the Levinsky's business was faring in relation to competition from Wal–Mart" and "[t]he finished article itself doubtlessly exists as one of the many articles that focuses on the Wal–Mart versus small business topic of public interest." Defendant's Motion for Pretrial Determination on the Issue of Public Concern at 2, 11. The Court disagrees with Wal–Mart's expansive characterization of the content of the BIZ article. Although Boardman characterizes his article as strictly a profile of Levinsky's, the Court understands the article, as the title suggests, to be a description of how Levinsky's is faring in today's retail market.[7] Boardman Dep. at 43.

Here, the form of the speech, a statement given on the record in a telephone interview to a reporter for the preparation of an article, does not influence the Court one way or another on the issue of public concern. Another consideration related to the form of the expression is whether the speech suggests a subjective intent to contribute to any public discourse. *See Alinovi v. Worcester School Committee,* 777 F.2d 776, 787 (1st Cir.1985). Discussing Levinsky's advertising campaign with a local reporter certainly seems like a form of speech intended to comment on an issue of general concern. The Court is mindful, however, that Olson testified that he thought that he was "talking to a college student looking for information for an essay or paper of some kind." Tr. at 210–11. Un-

---

**5.** Wal–Mart and Levinsky's compete in the area of clothing and footwear markets. The Court makes this finding despite Olson's testimony that he did not feel that Levinsky's was in competition with Wal–Mart. Tr. at 211.

**6.** The Court notes that the Levinsky's advertisement could be comprehended to be the opposite of the public debate on the worth of Wal–Mart in the marketplace. Rather than a complaint about

Wal–Mart's effect on its business, Levinsky's advertisement is a direct challenge to Wal–Mart's ability to serve the relevant market.

**7.** It is difficult to characterize the article as one with a singular theme. The title of the article is *Levinsky's: Leaner and Meaner with Retail Competition.* Plaintiffs' Ex. A.

der those circumstances, when making the statement regarding Levinsky's telephone habits, Olson could not have intended to contribute to the public discourse on Levinsky's business practices or the issue of the competition between the two businesses. *See Alinovi,* 777 F.2d at 787 (teacher's posting of letters of reprimand issued to her by school administration did not implicate issue of public concern because, in doing so, "she was not concerned with any possible violation of her Fourth Amendment rights, but rather, with [a] purely personal issue concerning the lack of action on the part of the administration regarding her disciplinary problem"). In light of the evidence about Olson's subjective intent, the Court finds the form of speech to be inconclusive on the public/private concern issue.

In its opinion, the Court of Appeals directed that "[t]he primary focus of the relevant constitutional inquiry must remain on the speech's content and the public's perception of the topic." *Levinsky's,* 127 F.3d at 133. The content of the speech at issue here, the customary timeliness with which Levinsky's answered its telephone, in isolation and detached from its context, does not raise an issue of public concern. This speech, however, can be reasonably understood as addressing a matter of general public concern in the context of the competition between these two retailers for customers. The statement regarding Levinsky's telephone response habits speaks directly to customer service: a consideration of primary importance to consumers in a competitive marketplace.

On this record, however, the Court is concerned that Olson may have developed, as a consequence of his managerial position with Wal–Mart, a fairly nebulous personal gripe with Levinsky's. The personal nature of Olson's feelings were, in Boardman's opinion, clearly conveyed to Boardman when Olson volunteered that he had been put on hold. Tr. at 42–43. From this, Boardman concluded that Olson "was disgruntled by the fact that [that] had happened to *him.*" Tr. at 42–43. Describing his conversation with Olson in general terms, Boardman said "[i]t was a situation where he was expressing his opinions on his experiences with Levinsky's."

Tr. at 41. Overall, to Boardman, Olson's unsolicited comments seemed more personal in nature. Tr. at 41–42. Boardman felt that some of Olson's comments could be characterized as personal due to their uncommonly "hurtful" nature. Boardman Dep. at 43.

The personal facet of this controversy may also be gleaned from the other comments made by Olson which were published in the BIZ article and later found to be unactionable opinions. For instance, Olson's own testimony concerning the foundation of the "trashy" comment was that it was based on his singular personal experience when shopping for his children's shoes at the Freeport Levinsky's store. Tr. at 213. The genesis of this as a personal dispute between Olson and Levinsky's could have been Olson's unsuccessful attempts to put a stop to, what he considered to be, false advertising by Levinsky's. Tr. at 74, 215–17, 225–27. Apparently, the accuracy of Levinsky's advertisement depended upon which Wal–Mart store was used for Dickies price comparison. Olson was ultimately told by Wal–Mart's legal department that the advertisement was "okay." Tr. at 217. Also fueling the fire was an incident arising from Philip Levinsky having repeatedly purchased most of the underwear at one Wal–Mart store. Tr. 85–86, Eventually, Wal–Mart told Philip Levinsky that he was taking too much inventory and that it would not allow him to continue to purchase that volume of underwear. Tr. at 86–87. These events took place during the same time that Boardman conducted the interviews for his article.

Although the comment can certainly be seen as a private attack by one individual on the business of another, the statement, the Court finds, is properly understood in a broader competition/customer service context. As Olson stated, "[i]f a customer has to wait too long on the phone, they get frustrated and they give up and they go somewhere else." Tr. at 214. Although Olson may have been projecting from his own experiences how prospective customers would find the service at Levinsky's, customer service has, in the orb of retail competition, a direct correlation to sales. Given the fact that Levinsky's opened the door on the subject of its

competition with Wal–Mart, the Court finds Olson's comment regarding having been put on hold for 20 minutes to be highly relevant to the business rivalry between Levinsky's and Wal–Mart.

Considering the Levinsky's advertisement relating to retail competition between two businesses and service to customers, the telephone interview, the BIZ article written about Levinsky's as a competitor in the marketplace, the content of the statement itself—and despite the subjective intent of Olson—the Court concludes that the statement at issue here raises an issue of public concern. In reaching this conclusion, the Court has not accounted for the tangential relevance of the backdrop nationwide debate regarding the merits of Wal–Mart's effect on the marketplace.

### B. Malice

 The First Amendment requires that a private individual seeking presumed or punitive damages for a defamatory statement involving a matter of public concern must show actual malice. *See Dun & Bradstreet*, 472 U.S. at 751 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). Actual malice can be shown by evidence that the speaker acted with "knowing falsity or reckless disregard for the truth." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Wal–Mart strenuously argues that this record does not support a finding of actual malice in the constitutional sense and, thus, that the issue should not be put to a jury. The Court disagrees. There is evidence in the record from which a jury could find that Olson was aware that his statement was false or that he was acting with reckless disregard for the truth when he made the statement regarding Levinsky's telephone habits. Tr. at 214 ("I had made a phone call to Levinsky and it took me a long time to get through, I believe I tried at least three different times and I was on the phone each time maybe ten minutes or a *total of 20 minutes* or more.") (emphasis added).[8] *See also* Tr. at 231–32.

8. The Court's review of the trial transcript did not reveal that Olson was ever asked whether he

### C. Claims of the Individual Levinskys and Claim for Punitive Damages

Plaintiffs assert that the claims of the individual Levinskys, as well as the punitive damage claim, should be part of the case submitted to the jury on retrial. These issues were resolved against Plaintiffs at the first trial. The individual Levinskys never raised any challenge to the previous jury findings at any stage of post-trial proceedings or on appeal. Indeed, those issues were outside the scope of the First Circuit opinion that reversed the judgment on presumed damages and ordered the remand on the corporate Levinsky's, Inc. claim for defamation.

This is not a situation where the Court of Appeals has sent the case back to be retried with the inclusion of supplementary evidence. The Court of Appeals has remanded the case for a determination of whether Levinsky's was defamed under a narrower circumstance than was presented to the jury at the first trial. The issues with regard to individual Plaintiffs' damages and the punitive damage claim were factually decided by the jury against Plaintiffs. Plaintiffs do not get a second chance to litigate issues already decided against them.

### III. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Pretrial Determination on the Issue of Public Concern be, and it is hereby, **GRANTED**. The Clerk shall forthwith schedule a conference of counsel in order to discuss a date for jury trial.

made a call to Levinsky's that went unanswered.