Imelda T. **RODRIGUEZ**, Plaintiff,

v.

**LAREDO INDEPENDENT SCHOOL DISTRICT and Paul Cruz, in His Official and Individual Capacities, Defendants.**

No. Civ.A. L–99–22.

United States District Court,
S.D. Texas,
Laredo Division.

Feb. 2, 2000.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

ELLISON, District Judge.

Plaintiff, Imelda Rodriguez ("Rodriguez"), formerly Assistant Superintendent for Curriculum and Program Accountability for the Laredo Independent School District, has brought suit against Defendants, Laredo Independent School District ("LISD") and Superintendent Paul Cruz ("Cruz"). Rodriguez alleges that, in violation of the United States Constitution and the laws of the state of Texas, the Defendants demoted her in retaliation for having exercised her right of free expression. More specifically, Rodriguez alleges that she was disciplined and demoted for her advocacy of strict compliance with testing procedures and her consistent reporting of testing irregularities, actions that conflicted with Cruz's goal of raising standardized scores. She further alleges that Cruz's actions, and the School Board's corresponding acquiescence, violated her rights under the First Amendment of the United States Constitution, the Civil Rights Acts of 1871, 42 U.S.C. § 1983, and the Texas Whistleblower Law, *V.T.C.A. Government Code* § 554.002 *et seq.*[1] Defendants filed a

---

1. Rodriguez's Complaint also states:

To the extent that the federal civil rights laws might be deficient in the provisions

timely motion to dismiss Rodriguez's claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting failure to state a claim upon which relief can be granted. This decision arises from the motion to dismiss.

**Factual Background**

In evaluating a Rule 12(b)(6) motion, the Court must construe the facts in the light most favorable to the non-moving party. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ("At this pleading stage, petitioner's allegations must be accepted as true.") Thus, the following fact pattern is a summary of the events as they have been described by Rodriguez.

Rodriguez alleges that, on or around March 19, 1998, she was contacted by an administrator at the United Independent School District ("UISD"), an agency involved in the administration of statewide tests. The administrator notified her that a UISD investigation had revealed that a LISD teacher had improperly obtained an advance copy of a portion of a Texas Assessment of Academic Skills ("TAAS") examination and had used it to prepare her students in violation of testing procedures. Following UISD's investigation, the cheating was reported to the Texas Education Agency ("TEA"). Rodriguez immediately reported the information to the then-Superintendent, Graciela C. Ramirez ("Ramirez"). With the assistance of its counsel, the LISD conducted its own investigation and notified TEA of its findings.

In April 1998, Rodriguez advised LISD principals that their schools were expected to comply with all testing guidelines and directives. Any deviations would be thoroughly investigated and reported to the TEA. Rodriguez had previously discovered that, while administering tests, teachers were engaging in a technique, known as "pacing." "Pacing" is a "system by which the teacher conducting the testing instructs students, contrary to the mandated testing procedures, to work only on one or a small group of questions ... then stop and not proceed until told to do so by the teacher ... the teacher can then be aware of what all the students are working on, and provide improper and unlawful assistance." *Original Complaint* at ¶¶ 4.34–4.35. Rodriguez found that this technique had been widely used throughout the school district during 1997. Thus, she also advised principals that this technique would be discontinued for any further tests that were administered in 1998.

In May 1998, Rodriguez met with LISD principals to discuss declining TAAS scores, which were attributed by some principals to the elimination of "pacing." In June 1998, TAAS scores were presented to LISD. Following the meeting with LISD, Rodriguez discussed the test results and the elimination of pacing with LISD President Sharyn Jordan ("Jordan"). According to Rodriguez, Jordan indicated that she had long suspected the occurrence of cheating. Jordan advised her not to provide a report on cheating to the newly appointed Interim Superintendent and not to tell anyone of their conversation.[2] However, Rodriguez ignored Jordan's advice, instead choosing to follow the instructions of LISD's counsel who advised her to notify the interim superintendent of her findings.

In the summer of 1998, Superintendent Cruz was appointed. In August 1998, shortly after his appointment, Rodriguez met with him to delineate the results of

necessary to furnish suitable remedies and punish offenses against the law, this Court respectfully is requested to apply the common law, as modified and changed by the Constitution and statutes of the state of Texas, as provided by the Civil Rights Act of 1866, as amended 42 U.S.C. § 1988(a). *Original Complaint* at ¶ 2.3. This seems to be a "catch all provision" since the Complaint

does not allege particularized violations of these provisions. They are likewise not raised in the Defendants' motion to dismiss and will not be addressed by this Court.

**2.** Since Ramirez had resigned, an interim superintendent had been appointed.

her investigations including the previous use of pacing, the recent discontinuance, the declining test scores and her insistence on proper test procedures. She also discussed with him the advantages of norm-referenced tests in predicting college aptitude and recommended that the district adopt these tests. At a subsequent meeting with LISD principals, Cruz indicated that, in conflict with Rodriguez's recommendations, he would not require that the norm-referenced tests be administered. Cruz also publicly predicted that, under his leadership, test performance would improve significantly. Rodriguez alleges that this announcement, in conjunction with his efforts to discourage norm-referenced testing, indicated Cruz's primary emphasis on testing scores at all costs, and his willingness to ignore compliance issues.

In September 1998, citing financial concerns, Cruz denied Rodriguez permission to attend a meeting that was typically attended by administrators with curriculum responsibility. Rodriguez alleges that Cruz's continued approval of travel for other conferences shows that financial concerns were pretextual. Cruz subsequently issued a memorandum removing Rodriguez from her position as Assistant Superintendent and appointing her to a previously non-existent administrative position, with responsibility for textbooks and janitorial service. Rodriguez was assigned to this new position even though that assignment conflicted with School Board policy of approving new positions prior to their formal establishment.

Rodriguez filed a timely grievance. When Cruz denied the grievance, she appealed to the School Board. Prior to her hearing with the Board, Cruz gave Rodriguez an unfavorable job evaluation. Rodriguez was granted a ten-minute period to make her presentation to the Board. Following private deliberations, the Board took no action.

Rodriguez filed this suit alleging violations of her free expression rights under the United States Constitution, the Civil Rights Acts of 1871, 42 U.S.C. § 1983, and the Texas Whistleblower Law, *V.T.C.A. Government Code* § 554.002 *et seq.* Defendants filed a timely motion to dismiss, contending that Rodriguez had failed to state a claim upon which relief can be granted.

Defendants' assertions include the following: 1) 42 U.S.C. § 1983 does not permit LISD to be held liable under a *respondeat superior* theory of liability; 2) Rodriguez has failed to demonstrate a good faith and reasonable belief that LISD was in fact violating the law as is required by the Texas Whistleblower Law; 3) Rodriguez's pleadings fail to pierce the veil of qualified immunity to which Cruz is entitled; 4) Rodriguez has failed to demonstrate that her speech implicated matters of public concern as is required by First Amendment jurisprudence; and 5) Rodriguez lacks jurisdiction to bring a whistleblower claim against Cruz under Texas law.

**Discussion**

This Court will address the motions to dismiss claims against LISD and Cruz in turn.

**Laredo Independent School District.**

*(1) Section 1983 claim*

LISD has moved to dismiss Rodriguez's § 1983 claim. Rodriguez alleges that LISD violated her First Amendment rights, and should be held liable under the Civil Rights Act of 1871, 42 U.S.C. § 1983.[3] For good reason, Rodriguez has not alleged that LISD should be held liable solely by virtue of its employment of Cruz since Supreme Court precedent clearly precludes that claim. *Monell v. Dept. of Social Serv. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[W]e conclude that a municipality cannot

**3.** Rodriguez also sought relief under § 1983 for alleged violations of her Due Process rights (under the Fourth and Fifth Amend-

ments). This claim was, however, withdrawn at the hearing and will not be addressed by the Court.

be held liable *solely* because it employs a tort-feasor or, in other words, a municipality cannot be held liable under section 1983 on a *respondeat superior* theory of liability." (emphasis in original)); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Thus, LISD's liability must be premised on some conduct above and beyond the simple act of hiring Cruz.

Rodriguez's original complaint and subsequent pleadings are unclear as to the precise conduct on the part of LISD that allegedly resulted in the violation of her constitutional rights. At the hearing, Rodriguez's counsel clarified her position by arguing that LISD was complicit in Cruz's conduct by taking no action in the face of her grievance. On this theory, LISD's inaction essentially constituted an act that ratified Cruz's conduct.

The Court need not linger long on this issue since the case law easily resolves it. In *Lopez v. Houston Independent School District*, 817 F.2d 351, 354 (5th Cir.1987), a school board was sued for the allegedly tortious actions of its employee, and filed a motion for summary judgment. Applying the *Monell* Court's finding that "Congress did not intend municipalities to be held liable unless action pursuant to official policy of some nature caused a constitutional tort," *Monell*, 436 U.S. at 691, 98 S.Ct. 2018, the Court of Appeals for the Fifth Circuit described the evidence a petitioner must produce to survive a motion for summary judgment under § 1983.[4]

■ The Fifth Circuit found that to survive such a motion a petitioner's pleadings

must allege that "(1) a policy (2) of the . . . policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of constitutional right." *Lopez*, 817 F.2d at 354 (*citing Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir.1987)) (*partially overruled on other grounds in Walton v. Alexander*, 44 F.3d 1297, 1303, n. 4 (5th Cir.1995) (en banc)).[5] The question then becomes, what constitutes official policy. Here too, the Fifth Circuit precedent provides a ready answer:

Official policy is:

A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated . . . .

A persistent widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents policy.

*Lopez*, 817 F.2d at 351.

■ Applying the *Lopez* test makes clear that Rodriguez's allegation will not suffice to meet this legal standard. Construing the facts in a manner favorable to Rodriguez, she has alleged *at the most* that the LISD failed to act, thus leading to the deprivation of the First Amendment rights. Surely, this inaction does not rise to the level of official policy. There is good reason that "the Court has repeatedly stressed the need to find a direct causal connection between municipal conduct and the constitutional deprivation." *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987) (O'Connor, J.

---

4. Although the instant case involves a motion to dismiss for failing to state a claim upon which relief can be granted, as opposed to the motion for summary judgement discussed in *Lopez*, the case is nevertheless apposite. In considering a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the complaint should be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, if as a matter of law, the legal basis of the claim is in and of itself insufficient, it is

immaterial whether there are sufficient facts to support the allegation. To the extent that *Lopez* sets out *legally* what Rodriguez is required to allege, it is on point.

5. That policy was based on the Fifth Circuit's application of the Supreme Court doctrine on municipal liability under § 1983, most notably articulated in *Monell* in which the Court stated that "Congress did not intend municipalities to be held liable unless action pursuant to official policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.

dissenting); *see also Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (arguing that the municipal policy must be the "moving force" behind the violation). Indeed, allowing an individualized instance of this sort of inaction to constitute a basis for a § 1983 action would erode the firm distinction between vicarious and direct liability that the Court emphasized in *Monell*.

### (2) Texas Whistleblower Law

■ LISD has also moved to dismiss Rodriguez's claim under the Texas Whistleblower Law, *V.T.C.A. Government Code* § 554.002 *et seq.* Rodriguez alleges that she suffered retaliation for reporting acts that she in good faith believed violated Texas law.[6]

Section 554.002 of the Texas Government Code provides, in pertinent part, that:

> a) A state or local governmental entity may not ... take ... adverse personnel action against, a public employee who in good faith reports a violation of law by employing governmental entity or another public employee to an appropriate law enforcement agency ...
>
> b) In this section, a report is made to an appropriate law enforcement authority if the authority is part of a state or local government entity or of the federal government that the employee believes in good faith is authorized to:
>
> > 1) regulate under or enforce the law alleged to be violated in the report....

*V.T.C.A. Government Code* § 554.002. Thus, there is a two-pronged test to determine whether a violation of § 554.002 has occurred. As applied in this case, it is first, whether Rodriguez made a good faith report of cheating and second, whether she believed in good faith that LISD had regu-

latory power with respect to violations of the TEA rules. Whether or not Rodriguez held a good faith belief that the rules were in fact being violated is a quintessential issue of fact. The same is true of her good faith belief that LISD had regulatory power with respect to such infractions.

Construing the facts in a manner that is favorable to Rodriguez, she has alleged enough in the pleadings to survive dismissal at this early stage. Her complaint includes reasonably detailed descriptions of the incidents that led her to believe that cheating was occurring and similarly detailed descriptions of the conversations supporting her belief that she was reporting these to the right authorities, namely, Cruz and the members of the School Board. *See* Original Complaint at ¶¶ 4.18 – 4.112. It may be that later information indicates that these beliefs were not held in good faith. For the Court now to dismiss on these grounds, however, would be premature.

### Superintendent Cruz

### (1) Qualified Immunity

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court delineated the circumstances under which government officials charged with discretionary functions are liable for violating a plaintiff's constitutional rights. Such officials [7] are protected by what has alternatively been called "qualified" or "*Harlow*" immunity. It was defined by the Court as follows:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

---

**6.** There is no question that, if the allegations of cheating are accurate, they would constitute a violation of rules promulgated by a governmental entity, namely, the Texas Education Agency. See Texas Administrative Code. Chapter 101 (generally adopting rules for student assessment, including a responsi-

bility by the Superintendent and the School Board to protect the security and confidentiality of testing materials).

**7.** *Harlow's* analytical framework clearly extends to state officials. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727.

*Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. This oft-cited section is frequently referred to as the *Harlow* test.

■ Prior to *Harlow,* the Court had divided the qualified immunity defense into subjective and objective elements. Recognizing that an official's subjective good faith often entailed questions of fact, the Court noted that this standard subjected public officials to the "substantial costs" associated with litigation. Indeed, even if a claim did not proceed to trial, determining whether it was meritorious often entailed "broad-ranging discovery ... (which) can be peculiarly disruptive of effective government." *Harlow,* 457 U.S. at 816–17, 102 S.Ct. 2727. The Court observed that those entitled to official immunity should be free not only of ultimate liability, but also of the time-consuming procedures such as discovery that are preliminary to trial. Thus, in an effort to shield public officials from precisely such diversions, the Court required trial judges to resolve the threshold question of the application of immunity prior to allowing discovery. *Harlow,* 457 U.S. at 816–17, 102 S.Ct. 2727. Subsequently, the Court has made the *Harlow* test even more precise. Recalling *Harlow*'s requirement that an official should be liable only if he has violated "clearly established" rights, which he should have recognized, the Court has delineated the precise meaning of "clearly established." A clearly established right must be "particularized," that is "[t]he contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creigh-*

*ton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Construing the facts in a light favorable to Rodriguez,[8] this Court's first task is to determine whether, as a matter of law, Cruz objectively should have known, that his actions were unlawful. For good reason, the Fifth Circuit, citing a sister circuit, has reminded us that: "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what a defendant is doing violates federal law in the circumstances." *Pierce v. Smith,* 117 F.3d 866, 882 (5th Cir.1997) (*citing Lassiter v. Alabama A. & M. University,* 28 F.3d 1146, 1150 (11th Cir.1994) (*en banc* )).

Under *Harlow,* the trial judge is first charged with determining the applicable law and whether it was clearly established. Rodriguez contends that Cruz should have known it was a violation of the First Amendment to penalize her for vocalizing her opinions on a matter of "genuine public interest," namely, the district's failure to comply with proper testing procedures.

*(2) Ascertaining whether qualified immunity applies: determining the law as it existed at the time*

■ Neither party disputes that Rodriguez's speech was protected under the First Amendment if it *at the most* addressed "a matter of public concern." Neither party disputes this has been clearly established law since the Supreme Court first articulated this principle in

---

**8.** Taking the goals of *Harlow* and its progeny "to heart" *Gassner v. Garland,* 864 F.2d 394, 397 (1989), the Fifth Circuit has suggested that § 1983 claims against public officials must be pled with "factual detail and particularity." *Elliott v. Perez,* 751 F.2d 1472, 1473 (5th Cir.1985). Facing pleadings which contain "broad, indefinite and conclusory terms" the Fifth Circuit warns trial courts not to "face it as just another lawsuit in which the notice pleading's liberal policy of Fed.R.Civ.P. 8 counts on pretrial discovery to ascertain the

factual basis for the claim."*Elliott,* 751 F.2d 1472 at 1479. Trial courts are advised to use the mechanisms at their disposal (short of discovery) to encourage plaintiffs to plead with particularity. For this reason, both parties have understandably focused on whether Rodriguez has in fact pled her claims with particularity. Having allowed Rodriguez ample opportunity to introduce all the facts at her disposal into her pleadings, this Court will proceed with the facts as they are presently alleged.

*Connick v. Myers,* 461 U.S. 138, 146–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see also Thompson v. City of Starkville,* 901 F.2d 456, 460 (5th Cir.1990).[9] The issue is whether Rodriguez's speech, as it was alleged in this case, was of public interest and whether a reasonable superintendent would have recognized this. In determining whether the speech in question addressed matters of public concern, the Court may consider several factors, including the content, form and context of the statements. *See Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684, *see also Moore v. City of Kilgore,* 877 F.2d 364 (5th Cir.1989). In order for this Court to find that Rodriguez's allegations can supplant the qualified immunity defense, it must necessarily find that, under the law as it existed at the time, Cruz should have known that Rodriguez's speech was protected under the First Amendment. This Court declines to take that course.

In *Terrell v. University of Tex. Sys. Police,* 792 F.2d 1360 (1986) and *Moore v. City of Kilgore,* 877 F.2d 364 (5th Cir. 1989), the Fifth Circuit addressed cases involving "mixed speech," that is, speech that arguably involved statements made in both a public (citizen) and private (employee) capacity. The Fifth Circuit found that the outcome turned on "whether the speech at issue was made primarily in the plaintiff's role as citizen or primarily in his role as employee." *Terrell,* 792 F.2d at 1362.[10] Rodriguez has pled several instances of speech[11] which may have led directly or indirectly to disciplinary action, most of which involve her conversations with Cruz, the Board and principals, concerning her investigations of pacing and other irregular testing practices; her insistence that such practices be discontinued; her efforts to counter the view that high test scores were contingent on the continued use of pacing; and her advocacy of norm-referenced tests as an accurate mode of assessment. Rodriguez contends that such speech addressed quintessentially public concerns, since there are few matters of more interest to the public than efforts to eliminate cheating in publicly administered tests. Cruz contends that these duties were performed as an employee since they fell within the core of Rodriguez's job portfolio as Assistant Superintendent for Curriculum and Program Accountability.

The truth is somewhere in between Rodriguez's and Cruz's claims. This is a quintessentially "mixed speech" situation involving speech that may simultaneously be

---

9. It is worth noting that all the cases cited and discussed in this section were decided prior to the time of the alleged actions and thus constitute the law as it existed at the relevant time.

10. In this way the Fifth Circuit was applying *Connick*'s observation that:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum is which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.

11. These instances of speech include the following: 1) Rodriguez's conversation with then—Superintendent Ramirez concerning a United ISD investigation of allegations of cheating by a Laredo teacher; 2) conversations with principals in which she sought to ascertain whether they had engaged in "pacing" or any other potentially irregular testing practices; 3) directives to principals that irregular testing practices were to be discontinued and would no longer be tolerated; 4) a discussion with principals regarding their concern that the discontinuation of pacing accounted for declining test scores; 5) a conversation with then—Superintendent Ramirez regarding the same issue; 6) a discussion with Jordan, the Board President of LISD, concerning the utilization of irregular testing practices; 7) a meeting with the interim Superintendent in the presence of LISD counsel in which Rodriguez reported on the prior existence of prohibited practices, their discontinuation and decreasing test scores; 8) an extensive conversation with Cruz in which Rodriguez laid out the results of her investigations including previous irregularities, her insistence on proper procedures, declining test scores and her recommendation that the district utilize norm-referenced tests.

viewed as job-based and also as implicating matters of public concern. Thus, this Court turns to the Fifth Circuit's "mixed speech" cases for guidance. Following *Connick*, the Fifth Circuit advises us to balance three factors, namely, "content, context and form ... factors must be considered as a whole package, [and] their significance ... will differ depending on the circumstances of the particular situation." *Moore*, 877 F.2d at 369–72.[12]

Applying these factors and construing the facts in a manner favorable to Rodriguez, this Court finds as a matter of law that the speech was predominantly related to Rodriguez's job as an employee. Beginning with an analysis of context, it is worth noting that all of the contested remarks were uttered in Rodriguez's professional capacity, that is, in her dealings with fellow educational professionals, including, principals, supervisors and board members. She was performing duties that by her own account, she was obligated to perform as part of her responsibilities for curriculum and program accountability. Indeed, inadvertently undercutting her own case, Rodriguez implies in her original complaint, that had she chose not to communicate concerns about cheating to the appropriate authorities as urged by Board President Jordan, she would have been derelict in her duties. See Original Complaint at ¶¶ 4.58–4.65.

Thus, recalling the Fifth Circuit's admonition to "focus on the hat worn by the employee," Rodriguez was undoubtedly wearing her professional hat. *See Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir.1993). A consideration of form also supports that view. Notably, all of Rodriguez's communications were intragovernmental in nature. Moreover, prior to filing this suit, Rodriguez sought to file internal grievances, rather than publicize her complaints. Although, "the fact that the Plaintiffs chose to file internal grievances rather than publicize their com-

plaints is not dispositive," *Benningfield v. City of Houston*, 157 F.3d 369, 374 (5th Cir.1998), it does support the view that Rodriguez considered her communications with Cruz and LISD to be a private as opposed to a public matter.

Consideration of content potentially cuts in the opposite direction. Yet, although it is indisputable that the content of Rodriguez's remarks implicates matters of public concern, this is in fact true of many educational issues. For good reason, education is a significant concern in the larger society; so much so, that it is difficult to conceptualize any educational issue that would not interest the public. Thus, even if it is true that cheating may be of more interest to the public than other issues, this is not sufficient to trump the other factors of context and form that cut heavily in the opposite direction.

Construing the facts in a manner favorable to Rodriguez, therefore, this Court finds that the comments at issue in this case were made primarily in her role as an employee and did not touch sufficiently on matters of public concern to be worthy of First Amendment protection. Given that Rodriguez's comments were not clearly entitled to First Amendment protection, Cruz did not waive his protections under qualified or *Harlow* immunity.

Although this court has in fact made a definitive ruling as to the law, it is worth noting that, even if the result had been more ambiguous, Cruz would still have been protected by qualified immunity. *See Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1297 (11th Cir.1998) ("If it is unclear whether the [speech] satisfies the public concern requirement, then [defendant] is entitled to qualified immunity ... because [defendant]'s actions did not violate ... clearly established First Amendment rights."). In any event, under the facts as alleged in the pleadings, Rod-

---

**12.** Defendant asks us to consider the Fifth Circuit's decision in *Teague v. City of Flower Mound*, 179 F.3d 377 (5th Cir.1999). Because, however, this Court is concerned only with law as it existed at the time of the alleged actions. *Teague* is not, for these purposes, properly part of the Court's reasoning.

riguez's comments were not sufficiently "public" in nature to put Cruz on notice and thus trump his qualified immunity defense.[13]

It may well be that had Rodriguez been allowed to proceed to discovery on this issue, more facts would have come to light to support her contentions. However, that is precisely the point of qualified immunity. Prior to imposing on a public official the burdens associated with discovery and other procedures preliminary to trial, is required to assess whether plaintiff is able to penetrate the qualified immunity defense. To allow Rodriguez to proceed to discovery, absent such a finding, would subvert the Supreme Court's directions in *Harlow.*

There is one final First Amendment claim that this Court will briefly address. Rodriguez contends that her First Amendment rights were violated not only when she exercised her right to free speech, but also when she exercised her right to petition for redress of grievances. She alleges that Cruz's damaging performance review indicates that she was being punished for exercising her right to petition for redress of grievances.[14] Even construing the facts in the manner most favorable to Rodriguez, it is clear that her grievance petition concerned solely private matters. Rodriguez was primarily concerned with clearing her name and regaining the position that she held prior to the alleged demotion. This is a quintessentially personal matter. Speech concerning the conditions of one's employment implicates private as opposed to public concerns, *Gillum,* 3 F.3d at 120–21, and thus, does not constitute a basis for waiving Cruz's qualified immunity.

A cursory review of this opinion may create the impression that Rodriguez is being held to an impossible standard. This, however, is not the case. As the Supreme Court has pointed out, a plaintiff is not required to demonstrate that the very action in question has been held unlawful. *Anderson,* 483 U.S. at 639–40, 107 S.Ct. 3034 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) and *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).) Rather, this Court need only find that the violation is apparent in light of pre-existing law. *Id.* The instant case does not present such a situation.

In sum, this Court finds that Cruz is entitled to qualified immunity since he could not, as a matter of law, be reasonably be expected to know that his actions were unlawful.

*(3) Whistleblower claim*

■ The Texas Whistleblower Law, *V.T.C.A Government Code* § 554.002 *et seq.,* does not create a cause of action against employees of a public agency. *See Texas Dept. of Human Services v. Green,* 855 S.W.2d 136, 142 (Tex.App.—Austin 1993). Instead, the statute creates a cause of action against state local or governmental agencies. *See V.T.C.A Government Code* § 554.004 ("A public employee who alleges a violation of this chapter may sue the employing state of local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent liability for the relief allowed under this chapter.") Absent the creation of such a cause of action by the Texas state legislature, allowing Rodriguez to proceed is not within this Court's province.

For the foregoing reasons, Defendant Cruz's Motion to dismiss the claims against him is granted. Defendant's

---

**13.** Given the resolution of Cruz's motion on the qualified immunity issue, this Court need not address the causation issue. In particular, causation implicates the question whether proximity in time constitutes a sufficient nexus between the allegedly protected speech and disciplinary actions against Rodriguez to sustain a claim against Cruz.

**14.** Again, it is unclear from Rodriguez's complaint precisely how LISD violated her First Amendment rights with respect to exercising her right to petition for redress of grievances. As has been previously established, LISD may not be held liable under a *respondeat superior* theory of liability.

LISD's Motion to dismiss the claims against it is granted in part and denied in part.

Given that all the federal claims have been dismissed, the only remaining claim is the claim against LISD based on the Texas Whistleblower Law, *V.T.C.A. Government Code* § 554.002 *et seq.* When all federal claims are dismissed, this court may exercise wide discretion in determining whether to retain jurisdiction over the remaining state law claims. See *Cinel v. Connick,* 15 F.3d 1338, 1344 (5th Cir.1994), cert. denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (noting that the district court has the discretion to adjudicate supplemental state law claims after dismissing the federal claims that originally served as the basis of its jurisdiction)), *see also Cabrol v. Town of Youngsville,* 106 F.3d 101, 110 (5th Cir. 1997); *Hubbard v. Blue Cross & Blue Shield Association* 42 F.3d 942, 947 (5th Cir.1995). After reviewing the customary considerations including judicial economy, convenience and fairness, *Cinel,* 15 F.3d at 1344, this Court will continue to exercise jurisdiction over the remaining state law claim.

IT IS SO ORDERED.