Imelda T. RODRIGUEZ Plaintiff

v.

Paul CRUZ Defendant

No. CIV. L–99–22.

United States District Court,
S.D. Texas,
Laredo Division.

Oct. 3, 2003.

Order Denying Reconsideration
Nov. 6, 2003.

David T. Lopez, Houston, TX, for Plaintiff.

Dennis J. Eichelbaum, Frisco, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

DAWSON, District Judge.

Currently before the Court[1] is Defendant Paul Cruz's motion for summary judgment and supplemental memorandum. (Docs.72, 86.) The Court heard arguments on September 10, 2003, and, pursuant to Plaintiff Imelda Rodriguez's request, allowed additional time within which to respond to Cruz's supplemental memorandum. All issues have now been addressed by the parties and the summary judgment motion is ripe for adjudication. For the reasons stated herein, the motion is GRANTED and the complaint is DISMISSED WITH PREJUDICE.

## I. PROCEDURAL HISTORY

Rodriguez instituted this action against the Laredo Independent School District ("LISD") and Superintendent Paul Cruz, alleging that Defendants reassigned her from her position as Assistant Superintendent for Curriculum and Program Accountability in retaliation for her advocacy of strict compliance with standardized testing procedures and for the reporting of testing irregularities. Rodriguez asserted a First Amendment retaliation claim under 42 U.S.C. § 1983 and a state-law claim under the Texas Whistleblower Act, Tex. Gov't Code § 554.002.

On February 2, 2000, the district court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissed the § 1983 claim against Cruz on qualified-immunity grounds, as well as the whistleblower claim against Cruz, and also the

---

1. The motion for summary judgment was referred pursuant to an assignment of the undersigned to perform judicial duties in the Southern District of Texas for the week of September 8–12, 2003, and such time as required thereafter to complete unfinished business.

§ 1983 claim against LISD. *See Rodriguez v. Laredo Ind. Sch. Dist.*, 82 F.Supp.2d 679 (S.D.Tex.2000). The district court retained jurisdiction over Rodriguez's whistleblower claim against LISD but, on April 18, 2001, granted LISD summary judgment on this claim. In the same order, the district court denied reconsideration of the dismissed § 1983 claims. *See Rodriguez v. Board of Trustees of Laredo Ind. Sch. Dist.*, 143 F.Supp.2d 727 (S.D.Tex. 2001).

On appeal, the Fifth Circuit affirmed the rulings with the exception of the § 1983 claim against Cruz. *See Rodriguez v. Board of Trustees of Laredo Ind. Sch. Dist.*, 65 Fed.Appx. 508 (5th Cir.2003) (unpublished per curiam). The Court found that since the claim was dismissed under Rule 12(b)(6), the focus must be limited to Rodriguez's complaint and that no other evidence could be considered. The opinion concluded that Rodriguez's complaint satisfied the "minimal pleading standard for each of the elements of a First Amendment retaliation claim" and that the "finding of qualified immunity in this case at the pleading stage was premature." *Id.* at 6. The decision reversed the dismissal of Rodriguez's § 1983 claim against Cruz and remanded it for further consideration. Cruz now has moved for summary judgment on this claim.

## II. FACTUAL BACKGROUND

The facts of this case were recited in detail in the two prior district court rulings and the same evidence is before this Court as the parties have adopted it by reference pursuant to Rule 10(c) of the Federal Rules of Civil Procedure. The prior detailed recital of this evidence was appropriate in every respect and is adopted and incorporated into this opinion and order with any new evidentiary submissions noted. The following is a brief synopsis of the facts not in dispute which are relevant to the limited issues before the Court.

Rodriguez worked for LISD for some 20 years in various positions and in 1997, was promoted to the position of Assistant Superintendent for Curriculum and Program Accountability. Cruz became the superintendent of LISD in the summer of 1998. On November 4, 1998, Cruz issued a memorandum reassigning Rodriguez to a previously non-existent administrative position, with responsibility for textbooks and janitorial service. In the memorandum, Cruz identified various areas of concern regarding Rodriguez's work performance, which he stated had been discussed with Rodriguez during the previous two months. He stated Rodriguez was being reassigned based on her failure to comply with the following directives, to wit:

1. Developing a positive climate in your department and with campus principals that fosters collaborative decision-making and improves communication;

2. Providing written documentation of your decision-making process for the issues with the Science Fair and the School Choice Program;

3. Providing written documentation on special education coding;

4. Providing written documentation on flexibility in the implementation of departmentalization; and

5. Following all my directives.

Rodriguez alleges that she was reassigned because she made reports to Cruz about the use of improper testing procedures by teachers during the administration of the Texas Assessment of Academic Skills ("TAAS").[2] Rodriguez contends

---

2. The TAAS is a statewide test designed to measure curriculum quality in various subjects at various grade levels.

that her reports were not favored by Cruz because he had given assurances that, under his leadership, test scores would improve significantly. This did not happen, according to Rodriguez, as test scores actually declined due to her insistence that proper testing procedures be followed.

## III. DISCUSSION

■ To succeed on a First Amendment retaliation claim, a plaintiff must establish that: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighed the defendant's interest in promoting efficiency; and (4) her speech motivated the defendant's actions. *See Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555, 563 (5th Cir.2003). Cruz moves for summary judgment on various grounds, to include qualified immunity. Essentially, Cruz argues that he is entitled to qualified immunity because it was not clearly established that Rodriguez's reports involved a matter of public concern. Cruz alternatively argues that, in any event, Rodriguez cannot establish that her speech motivated his decision to reassign her.

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of any material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Bridgmon v. Array Sys. Corp.,* 325 F.3d 572, 576 (5th Cir.2003). A material fact is one that "might affect the outcome of the suit under the governing law" and a "dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Sulzer Carbomedics, Inc. v. Oregon Cardio–Devices, Inc.,* 257 F.3d 449, 456 (5th Cir.2001) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Summary judgment is improper if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

### A. Qualified Immunity

Initially, the Court should address Rodriguez's contention that Cruz did not timely raise the qualified-immunity issue. She points out that the issue was not raised in Cruz's summary judgment motion filed on June 9, 2003. At a status conference held on July 31, 2003, the Court granted the parties until August 8, 2003, "for all submissions" and until August 14, 2003, for "cross submissions." Cruz raised the qualified-immunity issue in a supplemental memorandum in support of his motion for summary judgment filed on August 11, 2003, three days past the deadline. (Doc. 86.) Rodriguez objected that the supplement was untimely and that she did not have "due notice and opportunity" to respond, as she had only three days to file a response under the August 14th deadline set at the status conference. (Doc. 87.)

At the hearing on the motion for summary judgment on September 10, 2003, Rodriguez's counsel indicated that if the Court were to accept Cruz's supplemental memorandum, counsel would request additional time to respond to the qualified-immunity issue. The Court granted Rodriguez fifteen days to file any response, and the qualified-immunity issue is now properly before the Court for summary judgment consideration. *See* Fed.R.Civ.P. 56(c) (ten-day notice requirement); *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1293 n. 11 (5th Cir.) (finding that plaintiffs received sufficient notice of new arguments raised in supplement to summary judgment motion), *cert. denied,* 513 U.S. 926, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994); *cf.*

*Western Fire Ins. Co. v. Copeland,* 786 F.2d 649, 652 (5th Cir.1986) (holding that district court erred by not affording the nonmovants either the ten-day notice of Rule 56(c) or an opportunity to present their evidence).

■ The qualified-immunity doctrine shields public officials acting within the scope of their official duties "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal citations omitted).

■ The issue is whether it was clearly established at the time in question that Rodriguez's speech addressed a matter of public concern. Rodriguez argues that there is an issue of fact in dispute because the Fifth Circuit found that she satisfied the pleading standard on the issue of whether her speech was a matter of public concern and further, because she swore to the allegations in her complaint by declaration. The Court sees little merit to this argument, for whether Rodriguez's speech addressed a matter of public concern is a question of law. *See Anderson v. Pasadena Ind. Sch. Dist.,* 184 F.3d 439, 444 (5th Cir.1999). The fact that Rodriguez satisfied the minimal pleading requirements for Rule 12(b)(6) purposes does not preclude summary judgment on the issue.

■ Whether Rodriguez's speech involved a matter of public concern turns on "whether the speech at issue was made primarily in the plaintiff's role as citizen or primarily in [her] role as employee." *See Terrell v. University of Tex. Sys. Police,* 792 F.2d 1360, 1362 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). The Court must look at the content, form, and context of the speech to determine whether it addressed a matter of public concern. *See Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

Rodriguez's speech primarily concerned her investigations into irregular testing practices, her insistence that such practices be discontinued, and her recommendation that LISD utilize norm-referenced tests. The content factor weighs in Rodriguez's favor. As observed in the district court's ruling on the motion to dismiss, "education is a significant concern in the larger society; so much so, that it is difficult to conceptualize any educational issue that would not interest the public." *Rodriguez,* 82 F.Supp.2d at 687.

■ However, the Court must focus "on the hat worn by [Rodriguez] when speaking rather than upon the 'importance' of the issue [to] reflect the reality that at some level of generality almost all speech of state employees is of public concern." *Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir.1993) (per curiam), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994). The form and context of Rodriguez's speech indicate that she was speaking in her role as an employee and not as a private citizen. With regard to context, all of Rodriguez's reports were made in her professional capacity in the performance of her official duties as Assistant Superintendent for Curriculum and Program Accountability.

With regard to form, Rodriguez has not shown that, *prior to her reassignment,* her reports were "aired or considered in any 'widespread debate in the community.'" *Finch,* 333 F.3d at 564 (citation omitted). To the contrary, all of Rodriguez's reports regarding student testing were made internally at LISD. Rodriguez has submitted an "Editor's Letter" from a "national publication, 'The Week'" discussing educators' use of improper testing procedures to raise standardized test scores. (Doc. 98 at p.7.) This article, however, does nothing to demonstrate that this was a problem of widespread public debate during the time period in question, as it is dated September 26, 2003, some five years after Rodriguez's reassignment. Rodriguez also submits various newspaper articles from the Laredo Morning Times. (*Id.* Ex. 4.) While these articles address various issues regarding the use of the TAAS standardized test, none make any mention of the improper testing procedures Rodriguez reported to Cruz. Further, none of these articles is dated. The Court can discern only one that was unquestionably published prior to Rodriguez's reassignment. This article addressed a decline in TAAS scores at LISD from 1997 to 1998. Rodriguez, who was quoted in this article, suggested that the decline was attributable to other factors, such as a significant number of experienced teachers retiring, and stated that LISD's "action plan" to improve scores included "curriculum redevelopment, placing special emphasis on areas that kept TAAS scores down." Rodriguez made no mention of any improper testing procedures in this article. (*Id.* at p.9.)

Thus, considering the content, context, and form of Rodriguez's speech as a whole, the Court concludes that it was not clearly entitled to First Amendment protection as a matter of public concern. Rodriguez implies that even if it were not *clearly established* that her speech was a matter of public concern, Cruz should have subjectively known it was. Rodriguez argues:

Cruz, as did other Texas public school administrators, relied for guidance on the law on a publication of the National Organization on Legal Problems on Education (NOLPE), "Texas School Law: A Practical Guide." That publication correctly and simply set forth the legal principle: "Did the speech address a matter of public concern, such as racial policies, or did the speech address a matter of private concern, such as the employee's desire for higher pay?" (Doc. 87 at p.5.)

Rodriguez's argument is misplaced. First, as discussed above, the issue of whether speech addresses a matter of public concern is not as simple as this publication suggests. Moreover, even if Rodriguez's speech did address a matter of public concern and Cruz had subjective knowledge of this fact, he would still be entitled to qualified immunity. Qualified immunity turns only upon the *objective reasonableness* of a defendant's acts, and a defendant's *subjective state of mind* has no bearing on whether the defendant is entitled to qualified immunity. *See Thompson v. Upshur County, TX,* 245 F.3d 447, 457 (5th Cir.2001). Ultimately, for qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances. *See Sorenson v. Ferrie,* 134 F.3d 325, 330 (5th Cir.1998). As discussed above, it was not clearly established that Rodriguez's speech addressed a matter of public concern and Cruz is therefore entitled to qualified immunity.

**B. Reasons for Reassignment**

The qualified-immunity doctrine is best addressed early in cases where it is relevant, for it saves time and expense for all

parties. As Cruz is entitled to summary judgment on qualified-immunity grounds alone, it is not necessary to address whether Rodriguez's speech motivated Cruz's decision to reassign her. Nevertheless, as this case has been pending for over four years and the parties have engaged in extensive discovery and thoroughly briefed the issue of causation, the Court finds it appropriate to address this issue, as the lack of causation provides an alternate basis for granting Cruz summary judgment. *See Wallace v. Texas Tech. Univ.,* 80 F.3d 1042, 1051 n. 10 (5th Cir.1996) (affirming grant of summary judgment on free speech claim on alternate grounds of causation and qualified immunity).

 In the prior ruling on LISD's motion for summary judgment, the district court analyzed Rodriguez's whistleblower claim and concluded that she could not survive summary judgment on the issue of causation, as she failed to set forth sufficient facts to establish that she was reassigned as a result of her reports about testing procedures. Cruz argues that because the Fifth Circuit affirmed the grant of summary judgment on the whistleblower claim, the district court's findings regarding causation are the "law of the case." The law of the case doctrine precludes reexamination of issues decided on appeal, explicitly or by necessary implication. *See Chapman v. National Aeronautics & Space Admin.,* 736 F.2d 238, 241 (5th Cir.1984) (per curiam), *cert. denied,* 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984). Rodriguez argues that the Fifth Circuit's affirmance of the causation finding on her whistleblower claim does not establish the law of the case regarding causation on her First Amendment claim. The Court agrees because the Fifth Circuit opinion specifically stated that its focus was limited to Rodriguez's complaint. Had the Fifth Circuit considered the evidence regarding causation on Rodriguez's whistleblower claim and found it dispositive of the issue of causation on her First Amendment claim, there would have been no remand of the case.

 While the causation finding on Rodriguez's whistleblower claim is not the law of the case, the Court agrees with the district court's analysis and finds it to be applicable to Rodriguez's First Amendment claim. In the November 4, 1998 memorandum, Cruz indicated that he had discussed various problems with Rodriguez over the previous two months. He said he was reassigning Rodriguez because of a lack of communication and support from her department to campus principals; her failure to comply with Cruz's directive to provide written documentation to the principals regarding special education coding and flexibility in the implementation of departmentalization; and her failure to provide written documentation to Cruz explaining her decision-making process regarding LISD's Science Fair and School Choice Program. (Doc. 85 Attach.)

To dispute Cruz's stated reasons, Rodriguez relies on a statement of facts she submitted in support of her grievance to the school board.[3] (*Id.*) In this statement, she did not dispute that Cruz had concerns about "several matters raised by principals"; Rodriguez merely disagreed with Cruz's analysis of the matters. Rodriguez also did not dispute that she failed to provide the written documentation requested by Cruz. While Rodriguez implied that she did not have sufficient time to compile the documentation prior to her reassignment, there was no indication that she requested additional time. We agree with the statement in the district court's

---

**3.** After conducting a hearing, the school board took no action on Rodriguez's grievance.

prior ruling that Rodriguez cannot establish that "the points discussed in Cruz's ... memorandum were pretextual: she simply disagrees now—as she did in 1998—with his analysis." *Rodriguez,* 143 F.Supp.2d at 742.

 Rodriguez contends that her reports were not favored by Cruz because he had promised that test performance would improve significantly but test scores actually declined due to her insistence on proper test procedures. "Evidence that an adverse employment action was preceded by a superior's negative attitude toward an employee's report of illegal conduct is not enough, standing alone, to show a causal connection between the two events." *See Doyle v. Harris County,* 2003 WL 21664298, *6 (5th Cir.2003) (unpublished per curiam) (quoting *City of Ft. Worth v. Zimlich,* 29 S.W.3d 62, 69 (Tex.2000)).

Rodriguez also contends that recent events "establish persuasively the absolute lack of merit in Defendant Cruz's asserted motives for demoting Ms. Rodriguez." (Doc. 78 at p.4.) Specifically, Rodriguez points out that in April 2002, the Texas Comptroller issued an audit report of LISD validating the concerns she raised regarding student testing, and that in June 2003, the current Superintendent of LISD appointed Rodriguez to the position from which she was demoted, restoring her responsibilities over student testing. The Court is unable to determine how events that occurred four to five years after the reassignment had any connection to Cruz's motives.

Accordingly, the Court concludes that Rodriguez has failed to set forth sufficient facts to establish that her reports regarding testing procedures motivated Cruz's decision to reassign her. Thus, even assuming Rodriguez's claim is not barred by qualified immunity, she cannot survive summary judgment on the issue of causation.

## IV. CONCLUSION

Based on the foregoing, Cruz's motion for summary judgment is GRANTED and Rodriguez's complaint is DISMISSED WITH PREJUDICE.

## *ORDER*

Currently before the Court is Plaintiff's Motion for Reconsideration, Defendant's Response, and Plaintiff's Reply. (Docs.100—102.) Plaintiff moves the Court, pursuant to Federal Rule of Civil Procedure 59, to reconsider its October 3, 2003 order granting Defendant summary judgment and dismissing this action with prejudice. For the reasons stated below, the motion is DENIED.

 A timely motion to reconsider which challenges a prior judgment on the merits is treated as a Rule 59(e) motion to alter or amend the judgment. *See Fletcher v. Apfel,* 210 F.3d 510, 511–12 (5th Cir.2000). Plaintiff raises various arguments in support of her motion, many of which are reiterations of arguments Plaintiff made in opposing the grant of summary judgment. The Court finds it unnecessary to re-hash its analysis of these arguments and will address only those arguments which may raise issues not previously fully addressed.

### I. Qualified Immunity
### A. The Court Did Not Correctly Apply the Law

In granting Defendant summary judgment, the Court found that it was not clearly established at the time in question that Plaintiff's speech addressed a matter of public concern and that Defendant was therefore entitled to qualified immunity. Plaintiff argues that the Court "did not correctly apply the law" in analyzing whether Plaintiff's speech was a matter of public concern. Plaintiff argues that the

"test is whether a public employee is speaking on an issue other than purely personal concern." (Doc. 100 at 4.) Plaintiff once again oversimplifies the issue. The Court must look at the content, form, and context of the speech to determine whether it addressed a matter of public concern, *see Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), and, as discussed in the Court's prior ruling, the balance of these factors weighs against Plaintiff.

■ Plaintiff also argues that the Court erred in analyzing the form of her speech. In reliance on *Finch v. Fort Bend Indep. Sch. Dist.,* 333 F.3d 555, 564 (5th Cir.2003), the Court considered the fact that Plaintiff's reports were not "aired or considered in any 'widespread debate in the community.'" Plaintiff argues that such a showing was not required and that the Court's reliance on the quotation in *Finch* was misplaced, as *Finch* took this language from the dissent in *Harris v. Victoria Indep. Sch. Dist.,* 168 F.3d 216, 226 (5th Cir.1999). While *Finch* did quote the dissent in *Harris,* the issue of whether speech was made against a backdrop of widespread community debate was a factor considered by the *Harris* majority. *See Harris,* 168 F.3d at 222. Accordingly, it was a proper factor for this Court to consider.

Plaintiff attempts to liken her speech to that at issue in *Harris,* where school teachers were found to have spoken on a matter of public interest at a meeting in which they advised the school superintendent that they did not believe the principal was following the school's improvement plan. *Harris* is clearly distinguishable from the instant case, as the teachers spoke as elected representatives of the faculty in response to a request from the administration to speak about the school's progress. The *Harris* court specifically stated that the outcome of the case "might have been different had the Plaintiffs not been committee members reporting the views of the faculty at large to the administration." *Id.* at 222 n. 10. Based on the foregoing, the Court sees no merit to Plaintiff's argument that the Court incorrectly applied the law in concluding that Plaintiff's speech did not address a matter of public concern.

**B. The Court Improperly Rejected Plaintiff's Evidence**

In response to Defendant's summary judgment motion, Plaintiff submitted various newspaper articles from the Laredo Morning Times which she argued demonstrated that her speech was a matter of public concern. (Doc. 98 Ex. 4.) The Court rejected this argument, in part, because none of the articles were dated and the Court could discern only one that was unquestionably published prior to Plaintiff's reassignment. Plaintiff now contends that the articles were undated because the "[d]ates were cut off from the bottom during copying" (Doc. 100 at 4 n.2) and Plaintiff's counsel submits his declaration that the articles were published "at or before the time of plaintiff's demotion" (Doc. 100 Attach.).

Even if the articles were published during the relevant time period, the Court previously found that they did not demonstrate that Plaintiff's speech was a matter of public concern because none of them made mention of the improper testing procedures that were the subject of Plaintiff's reports. Plaintiff argues that the Court erred in discounting these articles because they demonstrated that the subject of student testing in general was a matter of public concern. Plaintiff cannot bootstrap her speech into the realm of public concern in this manner.

**II. Causation**

While the Court found that Defendant was entitled to summary judgment on

qualified-immunity grounds, it nevertheless addressed the issue of causation and found that it provided an alternate basis for granting Defendant summary judgment. Specifically, the Court found that Plaintiff failed to set forth sufficient facts to establish that her speech motivated Defendant's decision to reassign her.

Plaintiff argues that the Court erred in considering the evidence submitted by Defendant in connection with a prior motion for summary judgment. The Court sees no merit to this argument. Rule 10(c) of the Federal Rules of Civil Procedure allows a party to incorporate prior pleadings and exhibits by reference. Defendant specifically incorporated the previously filed exhibits by reference (Doc. 72 at 2 n.2) and Plaintiff was on notice that the Court would consider these exhibits, as it was discussed at the hearing on the motion for summary judgment. (Hearing Tr. at 8–10.)

Plaintiff also argues that the Court erroneously adopted the "factual findings" made in connection with the prior summary judgment rulings. The Court did not make or adopt any "factual findings." The prior summary judgment rulings recited the facts which were not in dispute in great detail. The Court independently reviewed the evidence, found that the prior rulings accurately recited the undisputed facts, and adopted and incorporated those facts rather than restate them. Thus, Plaintiff mischaracterizes the course taken by the Court.

### III. Conclusion

Based on the foregoing, Plaintiff's motion for reconsideration is without merit and is DENIED.