**Jane DOE, Individually and as Next Friend of Sarah Doe, a Minor, Plaintiff,**

v.

**Arthur AGUILAR, Individually and as Vice–Principal of Thomas E. High School, a Division of San Antonio Independent School District, Defendant.**

No. Civ.A.SA–03–CA–0174.

United States District Court,
W.D. Texas, San Antonio Division.

April 4, 2005.

Raul A. Rios, Law Offices of Raul Rios, San Antonio, TX, for Plaintiff.

Philip Marzec, Escamilla & Poneck, Inc., San Antonio, TX, for Defendants.

### MEMORANDUM ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY 45)

NOWAK, United States Magistrate Judge.

### Introduction

The matter before the court is defendant Arthur Aguilar's motion for summary judgment (docket entry 45). The motion was filed on November 12, 2004, and asserts that defendant Aguilar is entitled to summary adjudication of all the claims contained in plaintiff's complaint.

Plaintiff's complaint was filed on March 6, 2003 against San Antonio Independent School District (SAISD), Arthur Aguilar and Ruben Olivares under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201, 2202 (docket entry 1). On December 13, 2004, the parties filed a stipulation of dismissal as to the claims against SAISD and Ruben Olivares (docket entry 49) which was granted (docket entry 53). Thus, defendant Aguilar ("defendant"), the moving party, is the only remaining defendant in this action.[1]

After considering the motion for summary judgment (docket entry 45), plaintiff's response in opposition thereto (docket entry 54), defendant's reply (docket entry 58), the entirety of the record in this mat-

---

1. Plaintiffs sued defendant Aguilar "individually and as vice principal" of SAISD Edison High School. Insofar as plaintiffs asserted claims against defendant in his official capacity, those would be in essence a claim against the school district, with whom they have now settled. Given the parties' arguments in support of and opposition to the pending motion for summary judgment which omit any discussion of the official capacity claims, I have construed the plaintiffs' remaining claims against defendant Aguilar to be solely those claims asserted against him in his individual capacity.

ter and the applicable legal authorities, defendant's motion for summary judgment is GRANTED for the reasons that follow.

I have jurisdiction over this matter under 28 U.S.C. § 636(c). The parties have consented to proceed before a magistrate judge for all matters in this case, including trial and entry of judgment, and this action has been assigned to me for all purposes (docket entries 12, 20, 21). This court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

### Factual Background

Plaintiff, Sarah Doe, was a 14 year old special education student[2] at Thomas Edison High School in December 2001 when the events at issue in this case occurred. Defendant Arthur Aguilar was the Assistant Principal of Edison High School at the time. At all times pertinent to the instant action, Edison High School had a nondiscretionary early release policy which prohibited school officials from releasing students to anyone other than a parent, legal guardian or person designated in writing by a parent or legal guardian.

On December 7, 2001, at about 9:15 a.m., plaintiff Sarah Doe was taken to defendant Aguilar's office by a teacher after Sarah was found wandering in the hallways during a class period. This was the second time she had been brought to defendant Aguilar's office that morning, the first being for arriving late to class. Defendant had not encountered Sarah before December 7, 2001, and was not aware that she was a special education student or had special needs. He found her to be "coy" and perhaps evasive, but appropriately responsive during their conversations that morning.

Defendant ultimately decided to suspend Sarah for two days for truancy and insubordination. Defendant asked Sarah for her name and the phone number for her parents. She did not provide a phone number and he was not able to find her name in his electronic student database. After trying possible variants of her name in his computer, defendant allowed Sarah to call a person she identified as her uncle to arrange for a family member to pick her up from school. Sarah spoke to the "uncle," as did defendant. Defendant advised Sarah and the "uncle" that he needed to meet with the "uncle" when he arrived at the school. Defendant observed nothing unusual or suspicious about Sarah's phone conversation or his own conversation with the "uncle."

Defendant directed Sarah to wait in his office until her uncle arrived and advised her that she couldn't leave until he talked to them. Although defendant could have placed Sarah in the in-school suspension room, he choose not to use this option because he expected Sarah to be picked up shortly. At about 9:45 a.m., defendant left his office to attend to other duties, left Sarah alone in the lobby of the main office, outside the assistant principals' offices, and did not assign any support personnel to supervise Sarah or advise him when the uncle had arrived. Defendant then forgot about Sarah.

Contrary to defendant's instructions, Sarah left school some time later with the individual who she represented to be her uncle. At around 5:00 p.m. Sarah's grandmother and guardian contacted the school after Sarah failed to arrive at home as usual. Later that evening Sarah was located by San Antonio Police at the home of

**2.** Sarah is considered a special education student because of an emotional disturbance. Her grandmother and guardian described her as having aggressive and inappropriate behaviors, and attention span problems. The record does not reflect that Sarah has learning disabilities. Oral deposition of P.L., found at Appendix to docket entry 54.

the young man who had picked her up at school. She had allegedly been sexually assaulted by him.

### Applicable Legal Standards

A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Rule 56 provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3]

Rule 56 requires that there be no genuine issue of material fact. A fact is material if it might affect the outcome of the lawsuit under the governing law.[4] A dispute concerning a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[5] Therefore, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted.[6]

The movant on a summary judgment motion bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it alleges demonstrate the absence of a genuine issue of material fact.[7] To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense, or if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense.[8] Regardless of whether the movant accompanies its summary judgment motion with affidavits or other evidentiary materials, the motion must be granted if the evidence before the court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied.[9] Once the movant has carried that burden, the burden then shifts to the party opposing the motion to present affirmative evidence in order to defeat a properly supported motion for summary judgment.[10]

Importantly, the non-moving party cannot discharge this burden by referring to the mere allegations or denials of the non-moving party's pleadings.[11] Rather, the non-movant must, either by submitting opposing evidentiary documents or by refer-

---

3. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

4. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thomas v. LTV Corp.,* 39 F.3d 611, 616 (5th Cir.1994).

5. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Wise v. E.I. DuPont De Nemours & Co.,* 58 F.3d 193, 195 (5th Cir.1995).

6. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

7. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

8. *Edwards v. Aguillard,* 482 U.S. 578, 595 n. 16, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987); and *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. 2548.

9. *Id.*

10. *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505.

11. FED. R. CIV. P. 56(e); *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *State of Texas v. Thompson,* 70 F.3d 390, 393 (5th Cir.1995).

ring to evidentiary documents already in the record, set out specific facts showing the existence of a genuine issue for trial.[12] The court will look at the record in the light most favorable to the non-movant drawing all inferences most favorable to that party.[13] Nevertheless, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden."[14] Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his or her case on which he or she bears the burden of proof at trial.[15] Accordingly, summary judgment motions permit the court to resolve lawsuits without the necessity of trials if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[16]

### B. Qualified Immunity Standard

The seminal case outlining the standard for qualified immunity is *Harlow v. Fitzgerald,* a 1982 Supreme Court decision.[17] As a preamble to its detailed discussion of qualified immunity, the *Harlow* Court explained the policy underlying governmental immunity:

our decisions have consistently held that government officials are entitled to some form of immunity from suits for damages. As recognized at common law, public officers require this protection to shield them from undue interference with their duties and from potentially disabling threats of liability.[18]

When commencing its discussion of qualified immunity, the Court noted that qualified immunity, also known as "good faith immunity," was an affirmative defense which must be pled by the defendant-official.[19] The defense

has both an 'objective' and a 'subjective' aspect. The objective element involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights' ... The subjective component refers to 'permissible intentions' ... we have held that qualified immunity would be defeated if an official *'knew or reasonably should have known* that the action he took within his sphere of his official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious inten-*

12. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Fields v. City of South Houston, Texas,* 922 F.2d 1183, 1187 (5th Cir.1991); *Neff v. American Dairy Queen Corp.,* 58 F.3d 1063, 1065 (5th Cir.1995), *cert. denied,* 516 U.S. 1045, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996).

13. *Hibernia Nat'l Bank v. Carner,* 997 F.2d 94, 97 (5th Cir.1993). *See also Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (holding that a nonmovant cannot discharge her burden with doubt as to the material facts, by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence).

14. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.),

cert. denied, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)).

15. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548 ("In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of the proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."). *Id.* at 323, 106 S.Ct. 2548.

16. *See Fields,* 922 F.2d at 1187.

17. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

18. *Harlow,* 457 U.S. at 806, 102 S.Ct. 2727.

19. *Id.,* at 815, 102 S.Ct. 2727.

928

*tion* to cause a deprivation of constitutional rights or other injury . . . . ' [20]

■ Once qualified immunity has been pled as a defense, the plaintiff bears the burden of establishing that the defendant-official is not entitled to qualified immunity before the case can proceed any further. The Court held:

> bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[21]

In a subsequent decision further elucidating the process for determining whether a defendant is entitled to qualified immunity, the Court explained:

> The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation.[22]

■ At its essence, then, the qualified immunity analysis requires assessment of whether the defendant-official was on fair notice or warning that his or her actions were unlawful; that is, whether he violated a constitutional right that was clearly established at the time of the action.

> For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.' [23]

■ The "burden is on the plaintiff to overcome a defendant's defense of qualified immunity." [24] In order for plaintiff's claims to go forward, the plaintiff

> must show that the defendants' conduct was not objectively reasonable and, further, that the defendants violated clearly established law ... Moreover, the plaintiff must plead specific facts with a level of particularity so that they would, if proved, warrant the relief she seeks.[25]

### *Analysis*

Defendant asserts that he is entitled to summary judgment for the following rea-

---

20. *Id.*, at 815, 102 S.Ct. 2727 (internal citations omitted; emphasis as in original).

21. *Id.*, at 817–818, 102 S.Ct. 2727.

22. *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), *citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

23. *Id.*, at 739, 122 S.Ct. 2508 (internal citations omitted). *See also Davis v. Southerland*, 2004 WL 1230278 (S.D.Tex.2004)*; Rodriguez v. Laredo Independent School District*, 82 F.Supp.2d 679, 685 (S.D.Tex.2000).

24. *Burns–Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir.1994).

25. *Id.* (internal citations omitted). *See also Cantu v. Jones*, 293 F.3d 839, 845 (5th Cir. 2002), *citing Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir.1998):

> In reviewing a claim of qualified immunity, this Court must determine: '(1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2), if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident.'

sons: (1) because at all times he was acting as an employee of SAISD in his discretionary capacity and in good faith; (2) plaintiffs cannot establish that defendant acted with deliberate and conscious indifference to the statutory or constitutional rights of plaintiff; (3) plaintiffs cannot show that defendant knowingly placed plaintiff Sarah Doe in danger; (4) plaintiffs cannot establish that defendant increased the danger to plaintiff Sarah Doe; and (5) defendant is immune from liability on plaintiffs' state negligence claims.[26]

In response plaintiffs argue that defendant is not entitled to qualified immunity because: (1) plaintiff Sarah Doe had a constitutionally based right of reasonable care and safety when defendant, a state actor, imposed a restraint on plaintiff's liberty and said right was violated by defendant's actions; (2) ·defendant is liable because he increased or created a danger that resulted in harm to plaintiff Sarah Doe; and (3) defendant cannot claim official immunity for plaintiffs' state law negligence causes of action. Because defendant has pled qualified immunity as a defense and, therefore, met his initial burden as to summary judgment on all of plaintiff's claims, I will focus on plaintiffs' arguments in opposition to the motion for summary judgment. It must be remembered that, while all inferences must be made in favor of plaintiffs, plaintiffs nevertheless bear the burden of proving that defendant is not entitled to immunity.

## A. The duty to protect cause of action

■ In their first set of arguments in opposition to the motion for summary judgment, plaintiffs contend that summary judgment as to claims based on the duty to protect cause of action is inappropriate.[27] Specifically, plaintiffs aver that defendant is not entitled to qualified immunity on the duty to protect claim because defendant violated a clearly established constitutional right and his actions were objectively unreasonable. Plaintiffs assert that plaintiff Sarah Doe had a clearly established constitutional right of reasonable care and safety which arose because defendant, a state actor, imposed a restraint on plaintiff's liberty by "confining" plaintiff to the lobby area of the school. Plaintiffs further contend that defendant violated this constitutionally based obligation through his conscious disregard of his duties to follow the non-discretionary early release policy.[28] The entirety of plaintiffs'. arguments in opposition to the motion for summary judgment on the duty to protect claim (and defendant's entitlement to qualified immunity as to the same) depend on the imposition of a restraint on plaintiff Sarah Doe's liberty.

The cases cited by plaintiffs make it clear that plaintiff Sarah Doe's liberty was not restrained in a manner that would give rise to a constitutional obligation to protect. For example, in *Youngberg v. Romeo*[29] the individual restrained was a "profoundly mentally retarded" individual who was involuntarily institutionalized and placed in physical restraints. That the restraint of liberty must be complete in order to trigger the constitutional duty to protect is further explained in *DeShaney v. Winnebago County Dept. of Social Services*,[30] a case which cited and relied upon *Youngberg:*

---

26. Docket Entry 45, at 4.

27. Docket Entry 54, at 10–12.

28. *Id.*

29. 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

30. *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989).

when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. See *Youngberg v. Romeo, supra,* 457 U.S., at 317, 102 S.Ct., at 2458 ('When a person is institutionalized—and wholly dependent on the State[,] . . . a duty to provide certain services and care does exist') The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs— *e.g.,* food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. See *Estelle v. Gamble, supra,* 429 U.S., at 103–104, 97 S.Ct., at 290–291; *Youngberg v. Romeo, supra,* 457 U.S., at 315–316, 102 S.Ct., at 2457–2458. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. See *Estelle v. Gamble, supra,* 429 U.S., at 103, 97 S.Ct., at 290 ('An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met'). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his

own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.[31]

In this case, plaintiffs have cited no evidence that plaintiff Sarah Doe's liberty was restrained—as that term is contemplated in the applicable authorities. Consequently, the duty to protect was not triggered. Therefore, defendant has met his burden of establishing that no clearly established constitutional right was in place at the time the alleged wrongdoing occurred. For this reason, defendant is entitled to qualified immunity on plaintiffs' duty to protect cause of action.

### B. *The state-created danger cause of action/theory of recovery*

■ Additionally, plaintiffs argue that defendant is liable under the state-created danger theory of liability. This claim, arising from the Fourteenth Amendment's Due Process Clause and a variant of substantive due process, is an exception to the general rule that the state's failure to protect citizens from private violence does not violate due process. To state a claim premised on a state-created danger theory, plaintiff must show that a state actor committed an affirmative act of reckless indifference which created or increased the danger from private violence to an identified individual, and which act was a foreseeable cause of injuries or damage to that person.[32] Defendant Aguilar argues that

---

**31.** *Id.* (emphasis added).

**32.** *McClendon v. City of Columbia,* 305 F.3d 314 (5th Cir.2002) (en banc), *Johnson v. Dallas ISD,* 38 F.3d 198 (5th Cir.1994). *See also,*

"State–Created Danger Under 42 U.S.C.A. § 1983," 21 COA2d 175 (2004); " 'State–Created Danger,' or Similar Theory, as Basis for Civil Rights Action under 42 U.S.C.A. § 1983," 159 A.L.R. Fed. 37.

he is entitled to qualified immunity from suit and liability on this claim.

The state-created danger theory has been the subject of many recent discussions by the Fifth Circuit.[33] In 2003 the Fifth Circuit in *Scanlan v. Texas A & M University,* denied a motion to dismiss and remanded a dispute concerning the state's liability for the Aggie bonfire tragedy to the district court for further proceedings, suggesting that the state-created danger theory was viable in the Fifth Circuit.[34] However, more recently, the Fifth Circuit explicitly rejected this theory of liability, explaining "[w]e have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause.... We again decline to do so." [35]

In 2004 the district court in the Southern District of Texas after remand in *Scanlan* considered the state-created danger theory as applied to one of the Aggie bonfire cases, and observed that the Fifth Circuit had for more than ten years declined to recognize the state-created danger theory of substantive due process and, in fact, "scrupulously avoided it." [36] Accordingly, that court determined that because a reasonable school official in 1999 would not have been aware that the Constitution provided a right to be free from state-created danger, the defendants were therefore entitled to qualified immunity.

In *McClendon v. City of Columbia,*[37] the Fifth Circuit instructed that in determining whether a constitutional right is clearly established, the court may permissibly consider the law of other circuits outside the Fifth Circuit. The court, nevertheless, found that there was not a "consensus of cases of persuasive authority" such that a reasonable officer would have believed that his actions were unlawful at the time of the incident in that case, so as to have destroyed immunity.

[E]ven if a "consensus" of circuits had adopted some version of the state-created danger theory in July of 1993, this consensus did not at that time establish the contours of an individual's right to be free from state-created danger with sufficient clarity to provide Detective Carney [defendant] with fair warning that his conduct violated that right.

■ With this discussion in mind, I turn to the case before this Court. Significantly, I have not located a single case in our circuit where a defendant against whom a state-created danger theory of recovery has been urged, has not been found to enjoy the protection of qualified immunity. As noted above, plaintiffs have the burden to show that qualified immunity is unavailable here and to do so plaintiffs must show that the right which they allege defendant violated was clearly established in December 2001. They cannot do so. The state of the law on the state-created danger theory of recovery has been in flux in the Fifth Circuit—and it can be argued remains so even after *Scanlan.* Nor have plaintiffs shown that there was such a "consensus of circuits" embracing this theory of recovery in 2001 so as to make the contours of the law "clearly established." Accordingly, I cannot find that defendant Aguilar had "fair warning" that his actions involving Sarah on December 7, 2001

---

33. *See* cases cited at *Olivia Y. v. Barbour,* 351 F.Supp.2d 543, 553–554 (S.D.Miss.2004).

34. *Scanlan v. Texas A & M Univ.,* 343 F.3d 533 (5th Cir.2003).

35. *Rivera v. Houston ISD,* 349 F.3d 244, 249 (5th Cir.2003).

36. *Davis v. Southerland,* 2004 WL 1230278 at *6 (S.D.Tex.2004).

37. 305 F.3d 314, 333 (5th Cir.2002) (en banc).

would violate her substantive due process rights.

### C. *Plaintiffs' state law negligence claims*

In their final arguments in opposition to the motion for summary judgment, plaintiffs assert that summary judgment on plaintiffs' state law negligence claims would be inappropriate because: (1) defendant has failed to "show that he was a person who was performing discretionary duties, in good faith, within the scope of his authority when he took his actions that led to Sarah's harm;" and (2) that the "educator immunity statute in effect at the time deprived him of immunity for his negligence in disciplining students that ultimately results in bodily injury." [38]

■ First, plaintiffs assert that defendant does not enjoy official immunity on the state law negligence claims because defendant "had no discretion to provide for the release of Sarah in the manner in which he did." [39] However, the undisputed evidence in this case is that defendant did not release plaintiff Sarah Doe. Although defendant may have contemplated releasing her, he never consummated the act of releasing her. Plaintiffs do not dispute that defendant had the discretion to take Sarah out of class and make her wait for someone to pick her up. Plaintiff, therefore, has failed to establish that defendant was not performing discretionary duties. Thus, I find plaintiffs' first argument in opposition to summary judgment on the state law negligence claims unavailing.

■ Plaintiffs' second argument is that defendant may not escape liability for any injury suffered as the result of the negligent administration of discipline. In support of this proposition, plaintiffs refer the court to Texas Education Code § 22.051 as it was in effect at the times pertinent to this action, as well as *Diggs v. Bales.*[40]

■ The Texas Education Code relieves a professional school employee from liability for acts done within the scope of employment which involve the exercise of discretion or judgment.[41] However, a professional school employee may not escape liability if he uses excessive force or if his negligence in administering the punishment results in bodily harm. The *Diggs* court explained the exemption from liability in the following manner:

> In student discipline, force is sometimes applied in the punishment, i.e., corporeal punishment. In other instances, the punishment involves no force, but rather requires some action on the part of the student as a result of which the student suffers bodily injury. An example of the latter instance would be running laps around an athletic field. It is conceivable that an act or failure to act on the part of the professional employee might be a proximate cause of bodily injury suffered by a student in running the laps. We conclude that the phrase 'negligence resulting in bodily injury to students,' as used in [the Code] is directed at the latter manner of student discipline in which no force is used but negligence in the imposition of the punishment results 'in bodily injury to [the student].' [42]

---

38. Docket Entry 54, at 15–16.

39. Docket Entry 54, at 15.

40. *Diggs v. Bales*, 667 S.W.2d 916 (Tex.App.— Dallas 1984, *writ ref'd n.r.e.*).

41. *See Diggs*, 667 S.W.2d, at 918.

42. *Id.*

Defendant's actions in this case do not involve the kind of negligence contemplated by either the Texas Legislature in drafting the Education Code, nor the Texas courts in interpreting and administering the Code. The negligence exception was crafted for situations in which a school official directly caused a student to inflict injury upon himself as part of a discipline or punishment. In such a situation, it would make sense that responsibility for the seemingly self-imposed injury would flow to the administrator who caused the student to "self-inflict." There, the professional school employee would, in essence, be directing the student to cause injury to himself. In this case, it is undisputed that no such direction occurred. For these reasons, plaintiffs have failed to establish that defendant is not entitled to official immunity for the state law negligence causes of action.

### Conclusion

This case presents troubling facts; causation for Sarah's injuries multifaceted. Defendant is remorseful and would doubtless exercise discretion differently were these events replayed. However, the law does not impose liability where no recognized duty has been breached. Plaintiffs have failed to show that these facts support a recognized theory of recovery, or alternatively, that the facts defeat a claim of immunity from suit. For the reasons discussed above, I find that defendant Aguilar is entitled to immunity as to all claims plead against him.

Accordingly, defendant's motion for summary judgment is GRANTED in its entirety.

It is SO ORDERED.